1
DAVID CHIU, SBN 189542
City Attorney
2
YVONNE R. MERÉ, SBN 173594
Chief Deputy City Attorney
3
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
4
JOHN H. GEORGE, SBN 292332
DAVID S. LOUK, SBN 304654
5
Deputy City Attorneys
Fox Plaza
6
1390 Market Street, 6th Floor
San Francisco, CA  94102-5408
7
Telephone:     (415) 554-4223
Facsimile:     (415) 437-4644
8
E-Mail:         John.George@sfcityatty.org
                David.Louk@sfcityatty.org
9

10
Attorneys for Plaintiff
PEOPLE OF THE STATE OF CALIFORNIA, acting by
and through San Francisco City Attorney DAVID CHIU
11

12
UNITED STATES DISTRICT COURT

13
NORTHERN DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| 15  PEOPLE OF THE STATE OF CALIFORNIA, acting by and through San Francisco City Attorney DAVID CHIU, | Case No. 3:23-cv-06456-WHO |
| 16 | **PLAINTIFF'S MOTION TO REMAND** |
| 17         Plaintiff, | Hearing Date:     March 13, 2024 |
|    | Time:              2:00 p.m. |
|    vs. | Place:              Courtroom 2, 17th Floor |
| 18 | |
| 19  INCOMM FINANCIAL SERVICES, INC.; TBBK CARD SERVICES, INC.; SUTTON BANK; and PATHWARD N.A., | Trial Date:         N/A |
| 20 | |
| 21         Defendants. | |

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................3

NOTICE OF MOTION AND MOTION ..........................................................6

MEMORANDUM OF POINTS AND AUTHORITIES ...................................6

INTRODUCTION .............................................................................................6

BACKGROUND ...............................................................................................7

ARGUMENT ....................................................................................................8

    I.       DEFENDANTS BEAR THE BURDEN OF OVERCOMING THE PRESUMPTION AGAINST REMOVAL ............................................9

    II.     REMOVAL IS IMPROPER BECAUSE DEFENDANTS CANNOT ESTABLISH ANY BASIS FOR DIVERSITY JURISDICTION .........................9

          A.     Because the People of the State of California Is the Sole Plaintiff in This Case, Diversity Jurisdiction Does Not Exist.............................10

                 1.     The People are the only possible plaintiff in civil law enforcement actions brought by public prosecutors under California's UCL. ..........................................................10

                 2.     Federal courts in California have consistently declined to exercise diversity jurisdiction over civil law enforcement actions brought by public prosecutors on behalf of the People under the California UCL. ..........................................11

                 3.     The Court lacks diversity jurisdiction under the very principles set forth in *Lucent* and *Nevada*. .......................................12

                         a.    *Department of Fair Employment and Housing v. Lucent* ..12

                         b.    *Nevada v. Bank of America Corp.* ....................................14

          B.     Since *Lucent* and *Nevada*, District Courts Have Repeatedly Found Diversity Jurisdiction Lacking in Actions Brought by Public Prosecutors on Behalf of the People...........................................15

          C.     Pursuing UCL Civil Penalties Does Not Create Diversity Jurisdiction.....17

CONCLUSION....................................................................................................18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Abbott Lab'ys v. Superior Ct. of Orange Cnty.*
  9 Cal. 5th 642 (Cal., 2020) ................................................................................10, 13

4

*Acad. of Country Music v. Cont'l Cas. Co.*
  991 F.3d 1059 (9th Cir. 2021) ....................................................................................9

5

6

*Atascadero State Hosp. v. Scanlon*
  473 U.S. 234 n.44 (1985) .......................................................................................6, 11

7

*Cal. ex rel. Lockyer v. Dynegy, Inc.*
  375 F.3d 831 (9th Cir. 2004) ....................................................................................12

8

9

*Cal. Or. Power Co. v. Superior Court of Cal.*
  45 Cal. 2d 858 (Cal. 1956) ........................................................................................10

10

*California v. HomeAway.com, Inc.*
  No. 2:22-CV-02578-FLA (JPRx), 2023 WL 2497862
  (C.D. Cal. Mar. 14, 2023) ....................................................................................16, 17

11

12

*Cnty. of San Mateo v. Monsanto Co.*
  644 F. Supp. 3d 566 (N.D. Cal. 2022) .......................................................................16

13

14

*Cnty. of Santa Clara ex rel. Marquez v. Bristol Myers Squibb Co.*
  No. 12-CV-03256-EJD, 2012 WL 4189126 (N.D. Cal. Sep. 17, 2012) ...................12

15

16

*Cnty. of Santa Clara v. Wang*
  No. 5:20-CV-05823-EJD, 2020 WL 8614186 (N.D. Cal. Sept. 1, 2020).................16

17

18

*Department of Fair Employment and Housing v. Lucent Technologies, Inc.*
  642 F.3d 728 (9th Cir. 2011) ............................................................................. *passim*

19

*Gaus v. Miles, Inc.*
  980 F.2d 564 (9th Cir.1992) ........................................................................................9

20

21

*Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*
  599 F.3d 1102 (9th Cir. 2010) ....................................................................................9

22

23

*Hawaii, ex rel. Louie v. Bristol-Myers Squibb Co.*
  No. 14-00180-HG-RLP, 2014 WL 3427387 (D. Haw. July 15, 2014) ....................16

24

25

*Hunter v. Philip Morris USA*
  582 F.3d 1039 (9th Cir. 2009) ....................................................................................9

26

27

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*
  354 F. Supp. 3d 1122 (N.D. Cal. 2019) ...............................................................16, 17

28

*Kokkonen v. Guardian Life Ins. Co. of Am.*
   511 U.S. 375 (1994)....................................................................................................9

*Lavie v. Procter & Gamble Co.*
   105 Cal. App. 4th 496 (Cal. App. 2003) ...................................................................10

*Moor v. Alameda Cnty.*
   411 U.S. 693 (1973)..................................................................................................11

*Nevada v. Bank of America Corp.*
   672 F.3d 661 (9th Cir. 2012) .............................................................................. *passim*

*People ex rel. Feuer v. FXS Mgmt., Inc.*
   2 Cal. App. 5th 1154 (Cal. App. 2016).....................................................................15

*People of the State of Cal. by & through Los Angeles City Att'y v. Monsanto Co.*
   No. 2:22-CV-02399-ODW (SKXx), 2022 WL 2355195 (C.D. Cal. June 30, 2022) ...............16

*People of the State of Cal. v. Check 'N Go of Cal. Inc.*
   No. 07-2789-JSW, 2007 WL 2406888 (N.D. Cal. Aug. 20, 2007) ...........................12

*People of the State of Cal. v. Glen Arms Estate, Inc.*
   230 Cal. App.2d 841 (Cal. App. 1965)......................................................................11

*People of the State of Cal. v. Purdue Pharma L.P.*
   No. SACV 14-1080-JLS (DFMx), 2014 WL 6065907
   (C.D. Cal. Nov. 12, 2014)............................................................................15, 16, 17

*People of the State of Cal. v. Steelcase, Inc.*
   792 F. Supp. 84 (C.D. Cal. 1992) .......................................................................11, 12

*People of the State of Cal. v. Superior Court (Olson)*
   96 Cal. App. 3d 181 (Cal. App. 1979).......................................................................13

*People of the State of Cal. v. Time Warner, Inc.*
   No. 08-4446-SVW, 2008 WL 4291435 (C.D. Cal. Sep. 17, 2008) ...........................12

*People of the State of Cal. v. Universal Syndications, Inc.*
   No. 09-1186-JF, 2009 WL 1689651 (N.D. Cal. Jun. 16, 2009) ................................12

*People v. E.W.A.P. Inc.*
   106 Cal. App. 3d 315 (Cal. App. 1980).....................................................................17

*People v. Lim*
   18 Cal. 2d 872 (Cal. 1941).........................................................................................10

*People v. Pac. Land Research Co.*
   20 Cal. 3d 10 (Cal. 1977).............................................................................10, 11, 15

*Phillips v. Allstate Ins. Co.*
  702 F. Supp. 1466 (C.D. Cal. 1989) ..................................................................9

*Trotta v. URS Fed. Servs., Inc.*
  532 F. Supp. 3d 985 (D. Haw. 2021) ...............................................................9

*Washington v. Facebook, Inc.*
  No. C18-1031JLR, 2018 WL 5617145 (W.D. Wash. Oct. 30, 2018) ......................................16

**Statutes & Codes**
28 United States Code
  § 1331 .................................................................................................9
  § 1332(a) ...........................................................................................6, 9
  § 1441(a)-(b) .........................................................................................9
  § 1447(c) .............................................................................................6

California Business & Professions Code
  § 17200 ...............................................................................................7
  § 17204 .................................................................................6, 10, 15, 18
  § 17206(a) .......................................................................................13, 15
  § 17206(f) ...........................................................................................17

California Civil Code
  § 1714 ................................................................................................7
  § 1748.31 ............................................................................................7
  § 1770 ................................................................................................7

California Government Code
  § 100 ................................................................................................11
  § 12965(c)(2) .......................................................................................13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on March 13, 2024, at 2:00 p.m., Plaintiff the People of the State of California is scheduled to appear for oral argument in the courtroom of the Honorable William H. Orrick, at 450 Golden Gate Avenue, San Francisco, California, as necessary, to move this Court to remand this case under 28 U.S.C. section 1447(c).

The People respectfully request an order remanding this action in its entirety to the Superior Court of California, County of San Francisco for lack of subject matter jurisdiction. This motion is based on the accompanying Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

California law empowers certain public prosecutors, including the San Francisco City Attorney, to exercise the sovereign power of the State to pursue a lawsuit against any individual or business that harms the public through deceptive, unlawful, and unfair business practices. The California Legislature expressly authorized these public prosecutors to sue on behalf of the "People of the State of California" ("People") under the Unfair Competition Law (UCL). Cal. Bus. & Prof. Code § 17204. Defendant's Notice of Removal is the latest in a long line of failed attempts to invoke federal diversity jurisdiction in such a UCL suit brought on behalf of the People. *See* Notice of Removal, ECF No. 1 ("Notice"), at p. 2 (citing 28 U.S.C. § 1332(a)). Because public prosecutors exercise the State's sovereign powers on behalf of the People, courts have consistently concluded that *the State* – not any particular city or county – is the plaintiff and real party in interest in these cases. And since the State is not a citizen of itself, and therefore can never be party to a federal diversity action, *see Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 290 n.44 (1985), courts have promptly remanded such actions for want of diversity jurisdiction. This Court should do the same here.

Defendant does not dispute that this UCL action was filed on behalf of the People of the State of California to protect the public from the Defendants' alleged unlawful, unfair, and fraudulent business acts and practices. Rather, relying on *Department of Fair Employment and Housing v.*

*Lucent Technologies, Inc.*, 642 F.3d 728 (9th Cir. 2011), and *Nevada v. Bank of America Corp.*, 672 F.3d 661 (9th Cir. 2012), Defendant contends that San Francisco – and not the State – is the real party in interest in this case. *See* Notice ¶¶ 22–28. To reach this erroneous conclusion, Defendant misreads *Lucent* and *Nevada*, misunderstands California law, and ignores numerous cases since *Lucent* and *Nevada* that continue a decades-long, uninterrupted pattern of recognizing that public prosecutors step into the shoes of the State when bringing UCL actions. If anything, *Nevada* expands on the principles first identified in *Lucent* to compel the conclusion that the People are the sole plaintiff and real party in interest in UCL cases like this one.

Defendant has not cited a single case where a California federal court exercised diversity jurisdiction in a UCL case brought on behalf of the People. This Court should not be the first to do so. There is no basis for diversity jurisdiction, and this Court should remand this case back to its proper forum in state court.

## BACKGROUND

On November 9, 2023, Plaintiff, the People of the State of California, acting by and through San Francisco City Attorney David Chiu, brought suit in San Francisco Superior Court against InComm Financial Services, Inc. ("InComm"), as well as its three banking partners ("Bank Defendants"), TBBK Card Services, Inc., Sutton Bank, and Pathward N.A. (collectively, "Defendants"). The People's Complaint alleges that InComm has engaged in unlawful, unfair, and fraudulent business acts and practices in violation of the UCL, Cal. Bus. & Prof. Code § 17200, by, among other reasons, negligently harming consumers in violation of California law requiring the exercise of ordinary care, Cal. Civ. Code § 1714(a); violating California's law limiting consumers' liability for unauthorized debit card transactions, Cal. Civil Code § 1748.31; as well as violating California's Consumer Legal Remedies Act, Cal. Civ. Code § 1770. Compl. ¶¶ 112–24. On December 14, 2023, InComm removed the action to this Court. *See* Notice ¶ 1.

InComm is a major provider of prepaid nonreloadable debit cards that it markets as "Vanilla cards." Compl. ¶ 2. These cards are popular gifts, and are sold in San Francisco and throughout California at retailers like Safeway and Target. *Id.* ¶¶ 2, 10–12. For years, cardholders of Vanilla

debit cards have regularly discovered that shortly after activating the card – and often when going to use the card for the first time – the money put on the card is gone, and the balance is $0. *Id.* ¶ 2. Hundreds of consumers have reported remarkably similar experiences: after having the card declined for insufficient funds, they learn the funds were spent by someone else – without the consumer's permission, and before they ever had a chance to use the card. *Id.* InComm's insufficient security practices are the direct cause of this widespread "card draining." *Id.* ¶ 3. The packaging security for Vanilla cards is lax, and the cards lack other standard-practice security protocols that would prevent unauthorized access to the cards. *Id.* ¶¶ 3, 59–69. Despite thousands of consumer complaints and widespread coverage in the media over the years, InComm has done nothing to remediate the frequent, repeated, and unrelenting harm to consumers who buy or receive Vanilla cards. *Id.* ¶¶ 4, 69–73.

Worse still, neither InComm nor the Bank Defendants that serve as the issuers of these debit cards comply with their obligations under California law to reimburse Vanilla debit cardholders for unauthorized transactions. Compl. ¶ 5, 74–77. Numerous cardholders have reported InComm thwarts their reasonable efforts to obtain a refund. *Id.* ¶¶ 78–93. Vanilla cardholders are misled both about the security features of Vanilla debit cards and about InComm's refund process, *id.* ¶¶ 94–103, resulting in significant harm to them, *id.*, ¶¶ 104–111. Vanilla debit cardholders across the State of California are among the thousands who have fallen victim to InComm and the Bank Defendants' unlawful, unfair, and fraudulent business practices. *Id.* ¶¶ 18–19, 41–42, 43(e), (f), (g) & (i), 106(c).

On December 14, 2023, InComm filed notice of removal to federal court, claiming as a basis diversity jurisdiction. *See* Notice at p. 2.

## ARGUMENT

Although the sole Plaintiff in this case is the People, Compl. ¶ 8, InComm contends that complete diversity exists because each of the Defendants is a non-California citizen and the City and County of San Francisco ("San Francisco" or "the City") is the "real party" in interest, and thus the "true plaintiff," in this case. Notice ¶ 27. But the People are the only possible Plaintiff and real party at interest in this action. Because the People are an embodiment of the State – which is not a citizen of itself for diversity purposes – complete diversity does not exist, and this suit should be remanded.

## I.    DEFENDANTS BEAR THE BURDEN OF OVERCOMING THE PRESUMPTION AGAINST REMOVAL

Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A defendant may thus remove an action originally filed in state court only if the federal court would have had original jurisdiction over the subject matter of the action – that is, if the action either raises a federal question, or else meets the requirements for diversity jurisdiction. 28 U.S.C. §§ 1331, 1332(a), 1441(a)-(b); *see also Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042–43 (9th Cir. 2009).  As "[t]he party seeking to remove the case," InComm "bears the burden of establishing that removal is proper." *Trotta v. URS Fed. Servs., Inc.*, 532 F. Supp. 3d 985, 988 (D. Haw. 2021) (citing *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010)).  The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," rejecting federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1061 (9th Cir. 2021) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992)).  This strict construction is "especially [important] in diversity cases, since concerns of comity mandate that state courts be allowed to decide state cases unless the removal action falls squarely within the bounds Congress has created." *Phillips v. Allstate Ins. Co.*, 702 F. Supp. 1466, 1467–68 (C.D. Cal. 1989).

Notably, InComm does not claim that this action raises a federal question.  Nor could it, as the People's UCL claims arise solely under California law.  Compl. ¶¶ 118–24.  InComm's only purported basis for removal is diversity jurisdiction.  Notice ¶ 12.

## II.    REMOVAL IS IMPROPER BECAUSE DEFENDANTS CANNOT ESTABLISH ANY BASIS FOR DIVERSITY JURISDICTION

A federal court has diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a).  The rule requires complete diversity – *i.e.*, every plaintiff must be diverse from every defendant. *Hunter*, 582 F.3d at 1043.

Even if all Defendants are non-California citizens, diversity does not exist where, as here, the sole Plaintiff in the case – the People of the State of California – is not a citizen of California, and therefore cannot sue or be sued in a federal diversity action.

**A.   Because the People of the State of California Is the Sole Plaintiff in This Case, Diversity Jurisdiction Does Not Exist.**

The California Legislature has granted certain public prosecutors, including certain city attorneys, authority to enforce California's UCL on behalf of the People of the State of California.  *See* Cal. Bus. & Prof. Code § 17204.[1]  These prosecutors share sovereign enforcement authority granted under the UCL with the California Attorney General.  *Id.*; *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 503 (Cal. App. 2003); *Cal. Or. Power Co. v. Superior Court of Cal.*, 45 Cal. 2d 858, 871 (Cal. 1956).  In exercising this authority, city attorneys act on behalf of the People – *not* on behalf of their individual municipalities.  *See People v. Pac. Land Research Co.*, 20 Cal. 3d 10, 17 (Cal. 1977); *People v. Lim*, 18 Cal. 2d 872, 878 (Cal. 1941).  This "broad grant of authority" to public prosecutors also empowers them to seek injunctive relief, civil penalties, and restitution on a statewide basis.  *Abbott Lab'ys v. Superior Ct. of Orange Cnty.*, 9 Cal. 5th 642, 664 (Cal., 2020).

**1.   The People are the only possible plaintiff in civil law enforcement actions brought by public prosecutors under California's UCL.**

The only Plaintiff in this suit is the People of the State of California, acting by and through San Francisco City Attorney David Chiu.  Compl. ¶ 8.  Nonetheless, InComm argues that San Francisco is the real plaintiff in this action, because this case is being prosecuted by the City Attorney for the City and County of San Francisco.

---

[1] Defendant argues that "the Complaint fails to articulate a basis under California law for the [San Francisco] City Attorney to bring this suit on behalf of the state under the UCL."  Notice ¶ 20. Defendant appears to misunderstand how the UCL confers enforcement authority upon the San Francisco City Attorney.  Defendant dedicates several paragraphs to its unsubstantiated speculation – accompanied by an almost year-old *Axios* article – that San Francisco may not meet the UCL's 750,000-population threshold requirement enforcement provision, *id.* ¶ 21 (citing Cal. Bus. & Prof. Code § 17204), as well as that the City and County has not "allege[d] any facts to demonstrate compliance with such provisions."  *Id.* ¶ 20.  But the very next clause of UCL Section 17204 makes clear that UCL cases can be filed on behalf of the People by the "city attorney in a *city and county*" such as the City and County of San Francisco.  Cal. Bus. & Prof. Code § 17204 (emphasis added).

InComm is wrong.  The People did not bring this case to vindicate the rights of the City and County of San Francisco.  San Francisco is not pursuing any claims on its own behalf or seeking any relief that inures to the benefit of the City as an entity.  Instead, the People – acting by and through their statutorily-authorized representative – have filed this action to protect the general public.  *See Pac. Land Research Co.*, 20 Cal. 3d. at 17 (UCL action brought by public prosecutor is "designed to protect the public").  This action is therefore treated as if it had been brought by the State itself.  *See* Cal. Gov. Code § 100 ("The sovereignty of the state resides in the people thereof, and all writs and processes shall issue in their name. . . . The style of all processes shall be 'The People of the State of California,' and all prosecutions shall be conducted in their name and by their authority."); *People of the State of Cal. v. Glen Arms Estate, Inc.*, 230 Cal. App. 2d 841, 854 n.10 (Cal. App. 1965) (in a civil action brought by the People through a local representative, "the sovereignty of the state is in the people . . . , the 'People of the State' and 'The State' being descriptive of the same sovereignty" (citations omitted)).

Accordingly, and because it is well established that "a State is not a citizen of itself for [diversity] purposes," *Atascadero State Hosp.*, 473 U.S. at 290 n.44, the requirement that the case be "between . . . citizens of different states" is not satisfied in UCL cases brought by the People.  *See also Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973) (A California county is not a "a citizen of the State for diversity purposes" when acting as "'the arm or alter ego of the State'" rather than "political subdivision of a State.").

### 2. Federal courts in California have consistently declined to exercise diversity jurisdiction over civil law enforcement actions brought by public prosecutors on behalf of the People under the California UCL.

Because suits brought on behalf of the People are synonymous with an action brought by the State, federal courts have consistently remanded public prosecutions brought to enforce the UCL when removed solely on diversity jurisdiction grounds.  *People of the State of California v. Steelcase, Inc.* is exemplary of the many cases where courts have recognized that because the UCL "expressly authorizes this action to be prosecuted in the name of the People," the People – not the city or county whose public prosecutor filed the action on the People's behalf – are "the proper party plaintiff and the

real party in interest." 792 F. Supp. 84, 85–86 (C.D. Cal. 1992), overruled on other grounds by *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 849 (9th Cir. 2004).  *Steelcase* recognized the lack of federal jurisdiction because "[t]he People are the same party as the State of California," and "a state is not a citizen of itself [and] [t]herefore . . . cannot sue or be sued in a diversity action." *Id.* at 86.  In the decades following *Steelcase*, numerous district courts reached the same conclusion.  *See Cnty. of Santa Clara ex rel. Marquez v. Bristol Myers Squibb Co.*, No. 12-CV-03256-EJD, 2012 WL 4189126, at *3-4 (N.D. Cal. Sep. 17, 2012); *People of the State of Cal. v. Universal Syndications, Inc.*, No. 09-1186-JF, 2009 WL 1689651, at *5 (N.D. Cal. Jun. 16, 2009); *People of the State of Cal. v. Time Warner, Inc.*, No. 08-4446-SVW, 2008 WL 4291435, at *2–3 (C.D. Cal. Sep. 17, 2008); *People of the State of Cal. v. Check 'N Go of Cal., Inc.*, No. 07-2789-JSW, 2007 WL 2406888, at *5–7 (N.D. Cal. Aug. 20, 2007).

### 3. The Court lacks diversity jurisdiction under the very principles set forth in *Lucent* and *Nevada*.

Despite the many cases recognizing the State as the real party in interest when a public prosecutor brings a UCL case on behalf of the People, InComm contends that San Francisco – and not the State – is the real party in interest in this case.  Notice ¶ 27.  Defendant suggests, but does not (and cannot) state, that the numerous federal court decisions remanding on this basis before *Lucent* and *Nevada* somehow erred by declining to exercise diversity jurisdiction on the ground that the People in such actions are the real party in interest.  Notice ¶ 23.  But neither *Lucent* nor *Nevada* upsets the consistent finding, across several decades before and after those decisions, that the real party in interest in a UCL action brought by and through a public prosecutor is the People.  If anything, the principles distilled from both cases support that finding, including here.

### a. *Department of Fair Employment and Housing v. Lucent*

Defendant's assertion depends on a fundamental misreading of *Lucent*.  *Lucent* involved a claim under California's Fair Employment and Housing Act ("FEHA"), which authorizes California's Department of Fair Employment and Housing to pursue actions even on behalf of a *single aggrieved employee*.  642 F.3d at 735.  *Lucent* did not address, much less mention, California's UCL statute, which expressly authorizes public prosecutors to bring civil law enforcement actions "in the name of

the people of the State of California."  Cal. Bus. & Prof. Code § 17206(a).  Indeed, in a striking contrast to the UCL, the FEHA sets forth clearly that "the person claiming to be aggrieved shall be the real party in interest" even where the action is brought by the Department.  *Lucent,* 642 F.3d at 739 (citing Cal. Gov't Code § 12965(c)(2)).  *Lucent*'s central inquiry is "what interest California has in this litigation pursuant to its laws," *id.* at 738, and all it stands for is the uncontroversial proposition that a state's ordinary, generalized interest in ensuring compliance with its laws is insufficient to confer real party status.  Rather, "a State's presence in a lawsuit will defeat [diversity] jurisdiction . . . only if the relief sought is that which inures to it."  *Id.* at 737 (quotation marks and citation omitted).  Applying these principles, the Ninth Circuit in *Lucent* held that the State was not the real party in interest in the employment action filed by the Department on behalf of a single aggrieved employee, as any judgment in that single employee's favor would operate to *his* benefit.  *Id.* at 738–39.

There is a stark difference between the action at issue in *Lucent* to direct benefits to a single plaintiff and the civil law enforcement action brought by the People here seeking law enforcement civil penalties and statewide injunctive relief for all impacted members of the public.[2]  And here, in contrast to the FEHA, California courts have long recognized that the State's interest in enforcing its consumer protection laws is an especially "compelling interest" – indeed, "an exigency of the utmost priority."  *People of the State of Cal. v. Superior Court (Olson)*, 96 Cal. App. 3d 181, 191 (Cal. App. 1979) (quotation marks and citation omitted).  There is no dispute under California law that these interests may be secured by local public prosecutors acting on behalf of the People of the State.

The People's complaint more than sufficiently establishes these interests.  It explains that InComm's knowing, decade-long practice of employing insufficient security features with its nonreloadable Vanilla debit cards has resulted in harm to numerous defrauded Vanilla cardholders across California.  Compl. ¶¶ 18–19, 41–42.  This harm is exacerbated by InComm's misleading claims to consumers about its security practices and offer of refunds for unauthorized transactions, while in practice InComm and the Bank Defendants that issue its cards have failed to refund

---

[2] The California Supreme Court recently and unanimously made clear that the UCL permits public prosecutors to seek monetary relief on a statewide basis.  *Abbott Lab'ys*, 9 Cal. 5th at 658.

cardholders for unauthorized transactions as required by California law.  *Id.* ¶¶ 19, 74–93.  The People's complaint alleges that citizens across California have repeatedly fallen victim to InComm's false, misleading, and fraudulent business practices.  *E.g.*, *id.* ¶¶ 43(e), (f), (g) & (i), 106(c).  And it highlights that literally *thousands* of consumers have filed complaints with consumer advocacy websites BBB, *id.* ¶ 46, Consumer Affairs, *id.* ¶ 47, and Complaints Board, *id.* ¶ 48.  The State of California therefore has a compelling interest in this litigation to enforce and uphold its consumer protection laws.  The People's complaint easily clears *Lucent*'s bar to show "what interest California has in this litigation pursuant to its laws."  642 F.3d at 738.

### b.    *Nevada v. Bank of America Corp.*

*Nevada* does not change the diversity-jurisdiction analysis, either – if anything, it reaffirms it. In *Nevada*, the Nevada Attorney General sued under the Nevada Deceptive Trade Practices Act to "protect the hundreds of thousands of homeowners in the state allegedly deceived" by the defendant's mortgage lending practices.  *Nevada*, 672 F.3d at 670.  Distinguishing its holding from *Lucent*, the Ninth Circuit recognized that the "rationale for finding that the aggrieved individual was the real party in interest in *Lucent* compels the conclusion that Nevada is the real party in interest here," thereby defeating diversity.  *Id.*

Every factor cited by the *Nevada* court to reach this conclusion supports a similar finding that the People are the real party in interest here.  *First*, just as *Nevada* brought suit "pursuant to its statutory authority under the DTPA because of its interest in protecting the integrity of mortgage loan servicing," 672 F.3d at 670, here, the City Attorney filed suit pursuant to the statutory authority under the UCL because of the State's interest in protecting the integrity of the debits cards consumers purchase at retailers located across the state.  Compl. ¶¶ 31–32, 112–17.  *Second*, Nevada had a "specific, concrete interest in eliminating any deceptive practices that may have contributed to" the mortgage crisis's devastating impact on Nevada residents, 672 F.3d at 670 – an interest akin to the State's interest here in protecting its citizens from unlawful, unfair, and fraudulent business practices that have resulted in unrecouped financial losses for thousands of cardholders.  Compl. ¶¶ 42–49. *Third*, the Ninth Circuit pointed to Nevada's pursuit of civil penalties, a form of relief "available to it

alone," 672 F.3d at 671–72, something equally true here.  *See* Cal. Bus. & Prof. Code § 17206(a) (permitting civil penalties in law enforcement actions).  <u>*Fourth*</u>, it also highlighted Nevada's claim for injunctive relief that could be obtained under a standard only applicable in lawsuits brought by a public prosecutor.  *Id.* at 672.  Here, too, a similarly deferential injunctive-relief standard applies.  *See People ex rel. Feuer v. FXS Mgmt., Inc.*, 2 Cal. App. 5th 1154, 1158  (Cal. App. 2016) ("When the plaintiff is a governmental entity seeking to enjoin illegal activity, a more deferential standard applies.").  <u>*Last*</u>, the court confirmed that Nevada's claim for restitution for injured consumers did not diminish the state's sovereign interest in the action.  672 F.3d at 671.  The same is true here.  *See* Cal. Bus. & Prof. Code §§ 17204, 17206(a); *Pac. Land Research Co.*, 20 Cal. 3d. at 19 (the People's UCL action is "fundamentally for the benefit of the public" even when seeking restitution); *see also e.g.*, *People of the State of Cal. v. Purdue Pharma L.P.*, No. SACV 14-1080-JLS (DFMx), 2014 WL 6065907, at *4 (C.D. Cal. Nov. 12, 2014) (applying *Nevada* and ordering remand of public prosecutors' UCL action seeking restitution for individual consumers).  Every factor identified in *Nevada* is therefore present here, and just as the Ninth Circuit accordingly remanded for want of diversity jurisdiction, so too should the Court here.

> **B.**     **Since *Lucent* and *Nevada*, District Courts Have Repeatedly Found Diversity Jurisdiction Lacking in Actions Brought by Public Prosecutors on Behalf of the People.**

InComm invokes *Lucent* and *Nevada* as if they were watershed decisions casting doubt on the numerous cases upholding the authority of public prosecutors to bring UCL actions on behalf of the People as the real-party-in-interest.  *See* Notice, ¶¶ 20, 24–26.  However, after those cases were decided – just as before – district courts have consistently denied diversity jurisdiction where public prosecutors bring suit under their UCL or related statutory public prosecutor powers.  Indeed, many courts have *relied on Lucent* and *Nevada* for support in remanding actions removed on diversity grounds that were precisely like the People's suit here.  For example, in *Purdue Pharma*, a suit brought by and through the Orange County District Attorney and the Santa Clara County Counsel, the district court found that "*Lucent* and *Nevada compel* the conclusion that the People of the State of California – and therefore the State itself – are the real party in interest in . . . UCL and FAL actions

brought by local prosecutors." 2014 WL 6065907 at *3 (emphasis added). In similar fashion, in *California v. HomeAway.com, Inc.*, the district court found that in a suit brought by and through the Los Angeles City Attorney, the State was the real party in interest. No. 2:22-CV-02578-FLA (JPRx), 2023 WL 2497862, at *2 (C.D. Cal. Mar. 14, 2023). Just as in *Nevada*, the district court in *HomeAway.com* pointed to the numerous factors – all also present here – supporting that finding, including: (1) the city attorney's civil enforcement authority to bring UCL actions, *id.*; (2) the public's "substantial and specific interest in enforcing consumer protection laws," *id.* at *3; (3) that the plaintiff sought relief "for the State in the form of statutory penalties and an injunction under the UCL," *id.*; and (4) that "all such civil penalties must be exclusively (and uniquely) devoted to advance a State interest – the enforcement of consumer protection laws," *id.*

Numerous other decisions since *Lucent* and *Nevada* have similarly remanded suits brought by and through public prosecutors to enforce the UCL and related statutes protecting the public. *See, e.g.*, *Cnty. of San Mateo v. Monsanto Co.*, 644 F. Supp. 3d 566, 571 (N.D. Cal. 2022) (finding the People was the real-party-in-interest in public nuisance suit brought by and through County of San Mateo); *The People of the State of Cal. by & through Los Angeles City Att'y v. Monsanto Co.*, No. 2:22-CV-02399-ODW (SKXx), 2022 WL 2355195, at *3 (C.D. Cal. June 30, 2022) (same, as to public nuisance suit brought by and through Los Angeles City Attorney); *Cnty. of Santa Clara v. Wang*, No. 5:20-CV-05823-EJD, 2020 WL 8614186, at *2 (N.D. Cal. Sept. 1, 2020) (same, as to public nuisance suit brought by and through County of Santa Clara); *see also Washington v. Facebook, Inc.*, No. C18-1031JLR, 2018 WL 5617145, at *2 (W.D. Wash. Oct. 30, 2018) (same, as to Washington fair campaign practices suit seeking civil penalties and injunctive relief brought by and through Washington Attorney General); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 354 F. Supp. 3d 1122, 1131 (N.D. Cal. 2019) (same, as to Illinois consumer fraud suit seeking civil penalties and injunctive relief brought by and through Illinois county prosecutor); *Hawaii, ex rel. Louie v. Bristol-Myers Squibb Co.*, No. 14-00180-HG-RLP, 2014 WL 3427387, at *9 (D. Haw. July 15, 2014) (same, as to unfair-competition and elder-consumer-fraud suit brought by Hawaii). Notably, Defendant's Notice does not identify a single case that holds otherwise, before or after *Lucent* and *Nevada*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.    Pursuing UCL Civil Penalties Does Not Create Diversity Jurisdiction.

InComm also erroneously asserts that the City and County San Francisco must be the "real party in interest" because the People seek civil penalties as among the forms of relief public prosecutors are empowered to pursue under the UCL.  *See* Notice ¶ 28.  In particular, InComm wrongly charges that San Francisco "stands to unilaterally reap the rewards of the suit" because it will "receive *all* of the civil penalties collected as a result of the suit."  *Id.* (emphasis in original).

InComm is hardly the first defendant to raise this canard in an unsuccessful effort to justify diversity jurisdiction.  Critically, InComm ignores that any penalties recovered in this case will not go into San Francisco's general fund for the City's own use.  To the contrary, the penalties may only be used "by the city attorney for the enforcement of consumer protection laws," Cal. Bus. & Prof. Code § 17206(f), and therefore advance the State's – not only San Francisco's – interest.  Accordingly, as other courts that have rejected identical arguments to InComm's have held, it is "immaterial that the City would receive relief in this action because such relief would be dedicated to enforcing the State's consumer protection laws, and advance the interests of the State."  *HomeAway.com*, 2023 WL 2497862, at *3; *see also Purdue Pharma*, 2014 WL 6065907, at *3 ("While Defendants note that civil penalties paid under the UCL and FAL will go to the Orange and Santa Clara County treasuries – not to the State – this is immaterial in light of the fact that any recovery may be used only for the future enforcement of California's consumer protection laws, thereby furthering the interests of the State, not the Counties."); *In re Facebook, Inc.*, 354 F. Supp. 3d at 1134 ("[T]he purpose of a civil penalty is not to compensate a victim but to punish the wrongdoer and deter future wrongdoing by others. Thus, from a punishment and deterrence standpoint, it serves the interests of the statute . . . equally whether the penalties end up in [the] state or county treasury.").  In short, the fact that San Francisco may receive civil penalties in this case does not make the City the real party interest or create diversity jurisdiction.[3]

---

[3] Similarly irrelevant are InComm's attempts to cast doubt on the veracity of the People's allegations concerning the harm to consumers in California.  *See* Notice ¶¶ 25–26.  Whether a particular consumer received a refund has no bearing on whether diversity jurisdiction exists here.  And, because this is a law enforcement action, Plaintiff is not required to allege harm, although it plainly does (*see* Compl. ¶¶ 104-111).  *See People v. E.W.A.P. Inc.*, 106 Cal. App. 3d 315, 319 (Cal. App. 1980) (where a practice is unlawful, "[i]t is not necessary for the People additionally to allege

## CONCLUSION

Because the People are not a citizen of any state for purposes of diversity jurisdiction, the

People respectfully request that the Court enter an order remanding the action in its entirety to the

Superior Court of California of the County of San Francisco.

Dated:  January 30, 2024

                                             DAVID CHIU
      City Attorney
      YVONNE R. MERÉ
      Chief Deputy City Attorney
      SARA J. EISENBERG
      Chief of Complex and Affirmative Litigation
      JOHN H. GEORGE
      DAVID S. LOUK
      Deputy City Attorneys

By: */s/ David S. Louk*
      DAVID S. LOUK

      Attorneys for Plaintiff
      PEOPLE OF THE STATE OF CALIFORNIA, acting by
      and through San Francisco City Attorney DAVID CHIU

---

that it is . . . harmful to the consumer"); Cal. Bus. & Prof. Code § 17204 (differentiating between city attorneys, who do not need to show injury, and private parties, who must have "lost money or property as a result of the unfair competition").  Of course, even if allegations of harm were required, InComm's factual arguments are premature at this stage.