1  LAFAYETTE & KUMAGAI LLP
   Gary T. Lafayette (SBN 88666)
2  Brian H. Chun (SBN 215417)
3  1300 Clay Street, Suite 810
   Oakland, California 94612
4  Tel. 415.357.4600
   bchun@lkclaw.com
5

6  PATTERSON BELKNAP WEBB & TYLER LLP
   Jane Metcalf (admitted *pro hac vice*)
7  jmetcalf@pbwt.com
   Henry J. Ricardo (admitted *pro hac vice*)
8  hjricardo@pbwt.com
   1133 Avenue of the Americas
9  New York, New York 10036
   Tel: (212) 336-2000
10 Fax: (212) 336-2222

11
   *Attorneys for Defendant InComm Financial Services, Inc.*
12

13                        **UNITED STATES DISTRICT COURT**
14                       **NORTHERN DISTRICT OF CALIFORNIA**

15
   PEOPLE OF THE STATE OF CALIFORNIA,           Case No. 23-cv-06456
16 acting by and through San Francisco City Attorney
   DAVID CHIU
17                              Plaintiff,        **DEFENDANT INCOMM'S**
                                                  **OPPOSITION TO PLAINTIFF'S**
18           vs.                                  **MOTION TO REMAND**

19 INCOMM FINANCIAL SERVICES, INC.; TBBK
   CARD SERVICES, INC.; SUTTON BANK;
20 PATHWARD N.A.; and DOES 1 through 10          Hearing Date:   March 13, 2024
                              Defendants.         Time:           2:00 p.m.
21                                                Place:          Courtroom 2, 17th Floor

22

23

24

25

26

27

28
   Defendant InComm's Opposition to Plaintiff's Motion to Remand (Case No. 23-cv-06456)

**TABLE OF CONTENTS**

I.     STATEMENT OF ISSUES TO BE DECIDED ...........................................................1

II.    INTRODUCTION................................................................................................................1

III.   BACKGROUND ...................................................................................................................2

     A.     The City Attorney's Conclusory Allegations ...................................................3

     B.     The Complaint's Lack of Connection to the Interests of the State of California ................................................................................................................5

     C.     Basis for Diversity Jurisdiction.........................................................................6

IV.   ARGUMENT ........................................................................................................................7

     A.     The State is not automatically the real party in interest in every UCL suit filed in its name..........................................................................................................8

     B.     The City Attorney's Arguments to the Contrary Lack Merit ..........................10

     C.     Under the analysis required by *Lucent* and *Nevada*, the City and County of San Francisco is the real party in interest. ......................................................11

          1.     The State "as a whole" has no specific, concrete interest in the outcome of the case...........................................................................................................12

          2.     The relief sought primarily benefits San Francisco, not the State. ......15

V.    CONCLUSION ..................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Abbott Labs. v. Superior Ct. of Orange Cnty.*,
  9 Cal. 5th 642 (2020) .............................................................................................17

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*,
  238 F. Supp. 3d 723 (E.D. Pa. 2017) ................................................................10, 17

*Bates v. Mortg. Elec. Registration Sys., Inc.*,
  694 F.3d 1076 (9th Cir. 2012) .........................................................................15, 16

*California ex rel. Bates v. Mortg. Elec. Registration Sys., Inc.*,
  No. 2:10-CV-01429, 2010 WL 2889061 (E.D. Cal. July 21, 2010).........................9

*California v. HomeAway.com, Inc.*,
  No. 2:22-CV-02578-FLA (JPRx), 2023 WL 2497862 (C.D. Cal. Mar. 14, 2023)......11, 14, 16

*California v. Northern Trust Corp.*,
  CV 12-01813 DMG, 2012 WL 12888851 (C.D. Cal. Dec. 19, 2012).........................10, 11, 14

*Cnty. of San Mateo v. Monsanto Co.*,
  644 F. Supp. 3d 566 (N.D. Cal. 2022) ..............................................................11, 12, 14

*Cnty. of Santa Clara v. Wang*,
  No. 5:20-CV- 05823-EJD, 2020 WL 8614186 (N.D. Cal. Sept. 1, 2020).............................11

*Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*,
  No. C073747PJH, 2007 WL 2947421 (N.D. Cal. Oct. 9, 2007) ............................15

*Dep't of Fair Employment & Housing v. Lucent Tech., Inc.*,
  642 F.3d 728 (9th Cir. 2011) ........................................................................... *passim*

*Duchek v. Jacobi*,
  646 F.2d 415 (9th Cir. 1981) ..................................................................................9

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  354 F. Supp. 3d 1122 (N.D. Cal. 2019) ...........................................................11, 16

*Grancare, LLC v. Thrower by & through Mills*,
  889 F.3d 543 (9th Cir. 2018) ....................................................................................7

*Lively v. Wild Oats Mkts., Inc.*,
  456 F.3d 933 (9th Cir. 2006) ....................................................................................7

*Hawaii, ex rel. Louie v. Bristol Myers Squibb Co.*,
  No. 14-00180-HG-RLP, 2014 WL 3427387 (D. Haw. July 15, 2014)...................11

*Missouri, K. & T. Ry. Co. of Kansas v. Hickman*,
　183 U.S. 53 (1901) ................................................................8, 9, 12, 16

*Moor v. Alameda Cnty.*,
　411 U.S. 693 (1973) ........................................................................8

*Ex parte Nebraska*,
　209 U.S. 436 (1908) ........................................................................7

*Nevada v. Bank of America Corp.*,
　672 F.3d 661 (9th Cir. 2012) .............................................10, 11, 12, 13

*People of the State of Cal. by & through Los Angeles City Att'y v. Monsanto Co.*,
　No. 2:22-CV- 02399-ODW, 2022 WL 2355195 (C.D. Cal. June 30, 2022) .........................11

*People of the State of Cal. v. Purdue Pharma L.P.*,
　No. SACV 14-1080-JLS, 2014 WL 6065907 (C.D. Cal. Nov. 12, 2014) .................11, 14, 16

*Railway Co. v. Whitton's Administrator*,
　80 U.S. 270 (1871) ........................................................................9

*San Francisco Bay Area Rapid Transit Dist. v. Spencer*,
　No. C 04-04632 SI, 2005 WL 2171906 (N.D. Cal. Sept. 6, 2005) ...........................7

*Strotek Corp. v. Air Transport Ass'n. of Am.*,
　300 F.3d 1129 (9th Cir. 2002) ...............................................................8

*Turo Inc. v. City of Los Angeles*,
　No. 2:18-CV-06055-CAS-GJSx, 2020 WL 3422262 (C.D. Cal. June 19, 2020) ....................6

*Washington v. Facebook, Inc.*,
　No. C18- 1031JLR, 2018 WL 5617145 (W.D. Wash. Oct. 30, 2018) .............................11, 14

**Statutes**

28 U.S.C. § 1332(a)(1) ..........................................................................8, 9

28 U.S.C. § 1441(a) .............................................................................7

28 U.S.C. § 1441(b) .............................................................................7

California Business & Professions Code. ..........................................................6, 10

　§ 17200.........................................................................................6

　§ 17204.........................................................................................6

California Civil Code Section 1748.31 ............................................................5

1

## I.    STATEMENT OF ISSUES TO BE DECIDED

1) Whether the San Francisco City Attorney may unilaterally declare the State of California to be the "real party in interest" in an Unfair Competition Law suit, irrespective of any allegations establishing the State's interest in the suit.

2) Whether the State of California is the real party in interest when the Complaint alleges no specific, concrete interest of the State in the outcome of the suit beyond a general interest in enforcing its laws and the State would not benefit from the relief sought.[1]

## II.    INTRODUCTION

Notwithstanding the case caption, the San Francisco City Attorney is the sole driver and primary potential beneficiary of this case.  Nevertheless, the City Attorney asks the Court to hold that the State of California is the "real party in interest," simply because the City Attorney says so.  According to the City Attorney, the California Unfair Competition Law ("UCL") grants his office "sovereign enforcement authority" to "act on behalf of the people" of the State.  He further claims to have filed this case pursuant to that authority.  The City Attorney argues that this Court must take that assertion at face value; treat this action "as if it had been brought by the State itself," rather than a single municipal office; conclude that diversity jurisdiction is lacking; and remand to state court on that basis.

The City Attorney's logic is flawed in several respects.  As an initial matter, the UCL does not imbue the City Attorney, or any other municipal official, with the unilateral power to avoid federal jurisdiction merely by claiming to act in "the interests of the State."  If a state statute could confer that authority, then any state could "defeat federal jurisdiction in all litigation brought pursuant to its laws"—providing the states, and their chosen litigants, with an easy end-run around

---

[1] Defendant InComm Financial Services ("InComm") appears before this Court for the limited purpose of opposing Plaintiff's motion to remand.  InComm disputes that it is subject to personal jurisdiction in the State of California in this case, and reserves its right to challenge personal jurisdiction, either in this Court if remand is denied, or in the Superior Court if remand is granted.

federal diversity jurisdiction. *Dep't of Fair Employment & Housing v. Lucent Tech., Inc.*, 642 F.3d 728 (9th Cir. 2011). Because that would present a clear Supremacy Clause violation, the Ninth Circuit has rejected the City Attorney's argument that a litigant can represent "the interests of the State" just by invoking its statutory authority to do so. Rather, the litigant's allegations must reflect that the case ***in fact*** advances the interests of the State in concrete and specific ways.

The Complaint here flunks that test, as it offers virtually no support for the City Attorney's sweeping claim to act on behalf of "the State of California." The Complaint contains no allegations that Defendants' disputed practices have caused harm to State property, the State treasury, the State economy, or even the State citizenry. Indeed, despite claiming generalized harm to unnamed consumers, the Complaint does not clearly identify even one California consumer who has been harmed by Defendants' alleged misdeeds. Though the Complaint alludes to a handful of negative online reviews, several of which purport to be from consumers in California, it contains no allegations of consumer harm based on firsthand investigation or knowledge. Moreover, it does not even plausibly suggest that these online reviewers ultimately suffered injury, because neither the Complaint nor the cited reviews indicates that the California consumers in question were unable to obtain refunds. Thus, the City Attorney purports to bring this case on behalf of the "the people of the State of California," while identifying no harm to the State or its people.

Nor does the Complaint seek any relief that would inure to the State's benefit. Rather, it is apparent from the Complaint that the real party in interest is the City and County of San Francisco, which would receive all civil penalties if the City Attorney prevailed. Indeed, San Francisco is the *only* identifiable entity that stands to benefit from a judgment against Defendants. Accordingly, San Francisco, rather than the State of California, is the real party in interest. Because San Francisco is plainly a California citizen, while none of the Defendants is a California citizen, there is complete diversity of citizenship. The Court should therefore deny the motion to remand.

## III.   BACKGROUND

### A.    The City Attorney's Conclusory Allegations

Defendant InComm distributes and services non-reloadable Vanilla Prepaid Gift Cards, which cardholders can use like debit cards at the retailers of their choosing.  Decl. of Jane Metcalf in Support of Removal, Ex. B ("Complaint"), ECF No. 1-1, ¶¶ 21-22.  Unlike a debit card, however, a Vanilla Gift Card is not associated with a specific individual or bank account, and thus can easily be given as a gift.  Vanilla Gift Cards are available for purchase at retailers across the United States.  Compl. ¶ 31.  When purchasing a Vanilla Gift Card, the consumer pays the card's pre-set balance amount plus an activation fee, and the retailer "activat[es]" the card, *i.e.*, loads the card with its cash balance.  Compl. ¶¶ 27, 36.  The balance then becomes available for spending, by either the purchaser or his or her giftee.  InComm holds the funds associated with the Vanilla Prepaid Gift Cards in pooled accounts at various "issuing banks", including Defendants Pathward N.A., Sutton, and TBBK.  Compl. ¶¶ 10-12.

The Complaint alleges that "numerous Vanilla cardholders" have been targeted by fraudsters, who gain unauthorized access to Vanilla Gift Card balances and deplete card funds before the rightful cardholders can do so.  Compl. ¶ 41.  Unfortunately, gift cards of all varieties are indeed occasionally targeted by fraud—a problem that many jurisdictions, in California and elsewhere, have sought to address by prosecuting the criminals responsible for these acts.  *See, e.g.*, Decl. of Jane Metcalf in Support of Opp'n to Remand ("Metcalf Decl."), Ex. A (describing recent arrest of Sacramento individual involved in "gift card scam" implicating a variety of gift card products); Metcalf Decl. Ex. B., (indictment of fraudster for participation in a gift card fraud ring).

The City Attorney has taken a different tack, seeking to pin the blame on InComm and the issuing banks for allegedly *failing to prevent* the fraud on these products.  According to the City Attorney's Complaint, Defendants' mistake was that they packaged the Vanilla Gift Cards in "thin cardboard sleeve[s]" whose barcodes are visible while the card sits on the rack.  Compl. ¶¶ 57-58.  Defendants could put a stop to card fraud, the City Attorney maintains, if they would only take "simple and inexpensive steps" to make their packaging more secure.  In particular, the City

Attorney suggests covering the card information with "scratch-off or peel-off labels" or "snug[]ly" encasing the card in a "plastic shell." Compl. ¶¶ 59, 61-62. The Complaint alleges that Defendants have inexplicably elected to forgo these "simple" measures to deter fraud.[2] Compl. ¶ 69.

Notably absent from the Complaint is any factual support for these armchair fraud-prevention recommendations. For example, the City Attorney does not allege that the Vanilla Gift Cards' visible barcode provides fraudsters with a means to access the card funds (it does not; only the 16-digit card number does). Nor does the City Attorney allege any facts suggesting that "scratch-off or peel-off" labels are associated with reduced rates of fraud (to the contrary, as the above-referenced Sacramento report reflects, fraudsters can and do breach these features to obtain access to card funds). Furthermore, many of the prepaid products that the City Attorney holds up as bases of comparison are actually ***reloadable*** cards, which require user and account registration, and thus have entirely different security profiles from non-reloadable cards like the Vanilla Gift Cards. Compl. ¶¶ 59-62. Nevertheless, armed only with these unsophisticated critiques of InComm's security, the Complaint accuses Defendants of leaving the Vanilla Gift Cards improperly vulnerable to fraud, and misrepresenting the cards' security, in violation of the UCL.

The Complaint also alleges, in equally conclusory fashion, that Defendants "regularly fail to provide refunds for unauthorized transactions" on Vanilla Gift Cards that have been affected by fraud. Compl. ¶ 74. In fact, as the Complaint's own incorporated sources show, InComm provides a 24/7 assistance line for cardholders who have concerns about potential fraud, and routinely pays out-of-pocket refunds to consumers whose complaints of fraud can be substantiated. Compl. ¶¶ 76-83, n.31-32; Metcalf Decl. Ex. D (reflecting that the BBB has given InComm an A+ rating for its responsiveness to consumer complaints, and depicting many instances in which InComm provided

---

[2] In point of fact, InComm has long been a recognized leader in effective fraud-prevention methods, including protective packaging technology. *See, e.g.*, Metcalf Decl. Ex. C (describing patent awarded to InComm for its innovative fraud-deterrent method of packaging Vanilla Gift Card barcodes).

a refund). Nevertheless, the Complaint maintains, "many consumers" find the refund process "frustrating and unnecessarily time consuming." Compl. ¶¶ 76-77. In support of this contention, the Complaint relies exclusively on unverified online complaints from consumers—many of which, in fact, InComm has resolved by awarding refunds, as the Complaint's incorporated sources show. *See* Metcalf Ex. D. Based on these online sources, the Complaint accuses Defendants of violating California Civil Code Section 1748.31, which governs refunds for certain unauthorized transactions on "debit cards"; and by extension the UCL.

**B.     The Complaint's Lack of Connection to the Interests of the State of California**

Though the City Attorney purports to sue "on behalf of" the State, the Complaint says precious little about the State or its interests. The Complaint alleges that the Vanilla Gift Cards are available for sale "throughout California and the United States," (Compl. ¶ 31), and alludes vaguely to the "numerous Vanilla cardholders" (*id.* ¶ 18) and/or "[h]undreds of consumers" (*id.* ¶ 2) who have purportedly been harmed by Defendants' conduct. Yet it alleges no facts to support this account of widespread consumer dissatisfaction. Nor does it allege facts connecting these supposed consumer grievances to the State's interests. For that matter, the City Attorney does not identify, based on his own investigation, even one California consumer who suffered these harms. Although the Complaint cites an array of unverified consumer reviews from around the internet (Compl. ¶¶ 43-45), only six of those reviews are attributed to consumers purporting to live in California. And of those six, as the Complaint acknowledges, five ***actually obtained*** refunds from InComm for their allegedly defrauded balances (*see id.* ¶¶ 43(f)-(g), 43(i), 93(c)) while the fate of the sixth is unclear from the Complaint. *Id.* ¶ 92. The Complaint does not and cannot allege that any of these six individuals was ultimately ***denied*** a refund for his or her losses. Thus, even taking the Complaint's unverified reviews at face value, the City Attorney has failed to identify any harm to California consumers, much less to the State of California.

The Complaint also does not allege any other form of harm to the State's interests. It does not claim, for example, that Defendants' conduct has adversely affected the State's economy, its

business community, its government operations, or its natural environment. Without more detail about the magnitude of the alleged problem, it would be impossible to make such allegations. Instead, the Complaint relies on a series of assumptions: (1) that InComm's packaging must be to blame for all anonymous consumer complaints found on the internet; (2) that there must be some consumers in California with similar complaints; and (3) that these unnamed California consumers must not have been able to obtain relief through InComm's customer service channels. *See* Compl. ¶¶ 3-6, 120(c).

Because the Complaint fails to allege any ongoing harm to the State of California, it necessarily fails to seek meaningful relief on the State's behalf. The City Attorney seeks restitution for all "California consumers" who have been unfairly deprived of their funds, but the Complaint does not give any basis for contending that such consumers exist in significant numbers—let alone that the State would benefit from an award of restitution to those consumers. By the same token, while the Complaint seeks injunctive relief, it does not explain how, if at all, that relief would benefit the State of California. Indeed, judging from the face of the Complaint, there is just one identifiable party that stands to obtain relief:  the City and County of San Francisco, which claims "civil penalties" in the amount of $2,500 per alleged violation.

### C.    Basis for Diversity Jurisdiction

The City Attorney claims to sue on behalf of the People of the State of California "pursuant to Business and Professions Code 17200 *et seq*." Compl. ¶ 8. Section 17204 lists several different potential paths for a public prosecutor to sue on the State's behalf. The Complaint does not specify which part of Section 17200 authorizes this suit, or include any factual allegations to demonstrate authorization. Instead, the City Attorney explains for the first time in his remand motion that he relies upon the clause in Section 17204 authorizing a "city attorney in a city and county" to sue on behalf of the State.[3]

---

[3] While the City Attorney faults InComm for not knowing which provision Plaintiff has relied on, the statutory basis to sue as the State should be pleaded in the Complaint itself. *See Turo Inc. v.*

In any event, whatever the City Attorney's statutory basis for bringing suit, the Complaint reflects that there is complete diversity between the parties. Defendant InComm is a citizen of South Dakota, where it is incorporated, and Georgia, where it has its principal place of business. The other Defendants (the "Bank Defendants") are TBBK Card Services, Inc., a citizen of South Dakota; Sutton Bank, a citizen of Ohio; and Pathward N.A., a citizen of South Dakota. Removal Notice, ECF No. 1, ¶ 3. San Francisco, meanwhile, is a citizen of California, and the amount in controversy exceeds $75,000. None of this is in dispute. Accordingly, it is likewise undisputed that, if San Francisco is indeed the real party in interest, this Court has subject-matter jurisdiction under 28 U.S.C. § 1441(a).

## IV.   ARGUMENT

A defendant may remove "any civil action brought in a State court of which the district courts . . . have original jurisdiction," 28 U.S.C. § 1441(a). If the basis for removal is diversity jurisdiction, then "each plaintiff must be of a different citizenship from each defendant." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). Because "[r]emoval based on diversity jurisdiction is intended to protect out-of-state defendants from possible prejudices in state court," Section 1441(b) also requires that "no defendant is a citizen of the forum state." *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 940 (9th Cir. 2006).

Although a state is not a citizen of itself for purposes of diversity jurisdiction, "the mere presence on the record of the state as a party plaintiff will not defeat the jurisdiction of the Federal court when it appears that the state has no real interest in the controversy," *Ex parte Nebraska*, 209 U.S. 436, 444 (1908). This is because the presence of a "nominal party" does not "defeat removal

---

*City of Los Angeles*, No. 2:18-CV-06055-CAS-GJSx, 2020 WL 3422262, at *13 (C.D. Cal. June 19, 2020), *rev'd and vacated on other grounds*, 847 F. App'x 442 (9th Cir. 2021) (finding that the city had standing to bring its claims in an enforcement capacity because it "*alleged facts*" that established its authority to bring suit) (emphasis added); *San Francisco Bay Area Rapid Transit Dist. v. Spencer*, No. C 04-04632 SI, 2005 WL 2171906, at *6 (N.D. Cal. Sept. 6, 2005) (requiring that allegations demonstrating authorization to bring suit under the UCL be included in the complaint).

1    on diversity grounds." *Strotek Corp. v. Air Transport Ass'n. of Am.*, 300 F.3d 1129, 1132 (9th Cir.

2    2002) (citations omitted).  Rather, "a State's presence in a lawsuit will defeat jurisdiction under 28

3    U.S.C. § 1332(a)(1) only if 'the relief sought is that which inures to it alone, and in its favor the

4    judgment or decree, if for the plaintiff, will effectively operate.'" *Lucent*, 642 F.3d at 737 (quoting

5    *Missouri, K. & T. Ry. Co. of Kansas v. Hickman*, 183 U.S. 53, 59 (1901)).

6          Here, the City Attorney does not dispute that the City and County of San Francisco is

7    considered a citizen of California for purposes of diversity jurisdiction, that no Defendant is a citizen

8    of California, or that the amount being sought in damages exceeds $75,000.  *Moor v. Alameda Cnty.*,

9    411 U.S. 693, 717 (1973) (holding that for purposes of diversity jurisdiction, counties are entities

10   separate from the state and are thus considered citizens of the state in which they are located). Thus,

11   the City Attorney's motion turns entirely on whether the real party in interest is the State of

12   California or the City and County of San Francisco.  Given the absence of any allegation linking

13   this case to the interests of the State of California, this Court should deem San Francisco the real

14   party in interest and deny the City Attorney's motion to remand.

15   **A.    The State is not automatically the real party in interest in every UCL suit filed**

16   **in its name.**

17         The City Attorney's lead argument is that the State is the real party in interest because the

18   City Attorney has deemed it to be so.  He argues that because this is a civil law enforcement action

19   brought pursuant to the UCL by his office, the People of California "are the only possible Plaintiff

20   and real party in interest in this action."  Pl.'s Remand Mot., ECF No. 28, at 8; *see also id.* at 10; *id.*

21   at 6 (the state is the real party in interest in "these cases"); *id.* at 7 ("the People are the sole plaintiff

22   and real party in interest in UCL cases like this one").  This is so, the City Attorney claims, because

23   the Legislature has granted his office the "sovereign enforcement authority" to bring UCL cases in

24   furtherance of the State's interests.  *Id.* at 10.  The City Attorney maintains that he is exercising this

25   sovereign authority in this case, and that this Court should therefore deem the State the "real party

26   in interest"—no questions asked.

27

28         Defendant InComm's Opposition to Plaintiff's Motion to Remand (Case No. 23-cv-06456)

                                         -8-

1    But that is not how it works.  To start, diversity jurisdiction is a question of federal rather

2    than California law.  The Supremacy Clause of the U.S. Constitution accordingly prohibits states

3    from enacting statutes immunizing certain categories of cases from removal on diversity grounds.

4    In *Railway Co. v. Whitton's Administrator*, 80 U.S. 270, 286 (1871), the Supreme Court ruled that

5    cases arising under state law may not be "withdrawn from the cognizance of [] Federal court by any

6    provisions of State legislation" requiring that they be enforced only in state court without violating

7    the Supremacy Clause.  *See also Duchek v. Jacobi,* 646 F.2d 415, 419 (9th Cir. 1981) (finding that

8    a California statute should not be read to strip a federal court of jurisdiction to enforce judgment in

9    diversity and federal question cases).  Thus, regardless of what "sovereign authority" the California

10   Legislature has given the City Attorney under state law, that cannot control the federal question

11   whether diversity jurisdiction exists here.

12   For this reason, the Ninth Circuit has declined to interpret the Legislature's delegation of

13   "sovereign authority" as an automatic ticket out of federal court.  As the Ninth Circuit reasoned in

14   its seminal *Lucent* decision, "the state cannot possess the ability to defeat federal jurisdiction under

15   28 U.S.C. § 1332(a)(1), over an action between what would otherwise be two diverse citizens,

16   merely by enacting legislation pursuant to its police powers."  *Lucent,* 642 F.3d at 739, n.6.  If it

17   could, then any state could "defeat federal jurisdiction in all litigation brought pursuant to its laws."

18   *Id.* (citing *Missouri Railway,* 183 U.S. at 60).  Indeed, by the City Attorney's logic, any UCL case

19   brought by his office—no matter how self-interested or parochial in its focus—could be immunized

20   from removal by his unilateral decree that the case advanced "the interests of the state."

21   Rather than adopt this problematic result, the Ninth Circuit has held that the City Attorney's

22   mere "pronouncement of the [State as the] real party in interest . . . .is not binding on courts for the

23   purposes of diversity jurisdiction."  *Lucent,* 642 F.3d at 739, n.7.  *See also California ex rel. Bates*

24   *v. Mortg. Elec. Registration Sys., Inc.,* No. 2:10-CV-01429, 2010 WL 2889061, at *1 (E.D. Cal.

25   July 21, 2010), *aff'd sub nom. Bates v. Mortg. Elec. Registration Sys., Inc*., 694 F.3d 1076 (9th Cir.

26   2012) (denying a motion to remand in *qui tam* action brought on behalf of the counties and State of

27

28

California, rejecting the notion that the state "is always the real party in interest" in such an action). Instead, federal courts must undertake an independent analysis of whether the State has a "specific, concrete interest"—as opposed to a "general" governmental interest—in the outcome of the litigation.  *Nevada v. Bank of America Corp.*, 672 F.3d 661, 670, 672 (9th Cir. 2012); *see also Lucent*, 642 F.3d at 737.  As part of that analysis, courts should consider whether the complaint seeks "substantial relief" on the state's behalf that is "separate and distinct from the relief sought on behalf of the individual" plaintiff.  *Nevada*, 672 F.3d at 670, 672; *see also Lucent*, 642 F.3d at 737.

### B.      The City Attorney's Arguments to the Contrary Lack Merit

In sidestepping this independent analysis of the "real party in interest," the City Attorney misinterprets the law in several respects.  First the City Attorney suggests that this Court "would be the first" to exercise diversity jurisdiction "in a UCL case brought on behalf of the People."  Remand Mot. at 7.  That is incorrect.  In *California v. Northern Trust Corp.*, CV 12-01813 DMG, 2012 WL 12888851 (C.D. Cal. Dec. 19, 2012), the court denied a city attorney's remand motion in a UCL case, relying on *Lucent* to conclude that "the language of Section 17204 granting public prosecutors authority to sue on behalf of the People ***does not automatically make the state a real party in interest***."  *Id.* at *4 (emphasis added).  That court explained that the city attorney's conclusory characterization of the suit as an action on behalf of the State "fail[ed] to satisfy the Ninth's Circuit's recent requirements of specificity and concreteness."  *Id.* at *4 (citing *Lucent*, 642 F.3d at 737).  Another federal court applied similar logic to exercise diversity jurisdiction in a false advertising suit that a county prosecutor purported to file on behalf of the State under a closely analogous state-law provision.  *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 238 F. Supp. 3d 723, 727, 730 (E.D. Pa. 2017) (applying *Lucent's* "new standard for determining the real party in interest," and denying motion to remand).

So too here, this Court should not "automatically" find the State to be the real party in interest, but should instead consider whether the Complaint establishes the State as such with the

requisite "specificity and concreteness." *Northern Trust,* 2012 WL 12888851, at *4. Contrary to the City Attorney's insinuation, this Court would not be "the first" to do so in a UCL case.

The City Attorney further confuses the issue by citing a series of cases decided before *Lucent*. Remand Mot. at 11-12 (citing *People of State of Cal. v. Steelcase Inc.*, 792 F. Supp. 84, 85 (C.D. Cal. 1992); *Montelongo v. RadioShack*, No. 09-01235 MMM (AJWX), 2010 WL 11507995, at *12 (C.D. Cal. Mar. 31, 2010)). Because these decisions did not apply the probing, case-specific test that is now required under *Lucent*, they provide no useful guidance to this Court.

Indeed, the more recent cases the City Attorney cites (Remand Mot. at 15-16) only underscore the changes wrought by *Lucent*. Rather than apply a presumption that the State is the "real party in interest," these cases largely apply the case-specific analysis of the considerations laid out in *Lucent* and *Nevada*.[4] This Court should do the same here. Instead of blindly crediting the City Attorney's claim to act on behalf of the State, the Court should evaluate the Complaint's allegations to determine whether the case in fact implicates the interests of the State "as a whole." *Nevada,* 672 F.3d at 670.

## C. Under the analysis required by *Lucent* and *Nevada*, the City and County of San

---

[4] Furthermore, contrary to the City Attorney's suggestion, only two of these cases were UCL cases: *People of the State of Cal. v. Purdue Pharma L.P.*, No. SACV 14-1080-JLS (DFMx), 2014 WL 6065907, at *4 (C.D. Cal. Nov. 12, 2014) and *California v. HomeAway.com, Inc.*, No. 2:22-CV-02578-FLA (JPRx), 2023 WL 2497862, at *2 (C.D. Cal. Mar. 14, 2023). In these cases, as well as the non-UCL cases relied upon by the City Attorney, the courts applied the case-specific framework mandated by *Lucent*, rather than the un-rebuttable presumption urged by the City Attorney. *See Cnty. of San Mateo v. Monsanto Co.*, 644 F. Supp. 3d 566, 570 (N.D. Cal. 2022) (rejecting a default approach to apply the case-by-case approach of *Lucent* and *Nevada*); *People of the State of Cal. by & through Los Angeles City Att'y v. Monsanto Co.*, No. 2:22-CV- 02399-ODW (SKXx), 2022 WL 2355195, at *2-3 (C.D. Cal. June 30, 2022) (same); *Washington v. Facebook, Inc.*, No. C18-1031JLR, 2018 WL 5617145, at *3 (W.D. Wash. Oct. 30, 2018) (same); *Hawaii, ex rel. Louie v. Bristol Myers Squibb Co.*, No. 14-00180-HG-RLP, 2014 WL 3427387, at *8-9 (D. Haw. July 15, 2014). In *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 354 F. Supp. 3d 1122, 1136 (N.D. Cal. 2019), the court cited to and relied on *Lucent*, but was considering an Illinois statute under Illinois law; in *Cnty. of Santa Clara v. Wang*, No. 5:20-CV- 05823-EJD, 2020 WL 8614186, at *2 (N.D. Cal. Sept. 1, 2020), the court relied primarily on *Purdue Pharma,* which in turn applies *Lucent* as discussed above.

**Francisco is the real party in interest.**

Once applied, the Lucent analysis makes fast work of the City Attorney's claim to represent the State's interests in this case. The City Attorney cannot identify a single concrete allegation in the Complaint linking the suit to any interest of the State. Instead he relies on the amorphous notion that he is "enforcing consumer protection laws" for the benefit of "all impacted members of the public." Remand Mot. at 13, 16. But that generic retort, which could be made by any plaintiff in any consumer-fraud case, is not sufficient. Indeed, *Lucent* rejected the notion that a plaintiff may establish the state as the real party in interest merely by invoking the state's "governmental interest in the welfare of its citizens . . . and in securing compliance with all its laws." *Lucent*, 642 F.3d at 736 (quoting *Missouri Railway,* 183 U.S. at 60). *See also Cnty. of San Mateo*, 644 F. Supp. at 570 (finding that "standing alone, a state's general, governmental interests – including protecting the welfare of all its citizens, compelling obedience to the legal orders of all its officials, and securing compliance with all its laws – are insufficient.")

Rather, *Lucent* requires a careful review of the allegations to determine "the essential nature and effect of the proceeding as it appears from the entire record." *Nevada* at 672 F.3d at 670, *Lucent* 642 F.3d at 740. The Court must look past generic declarations of the sort the City Attorney has made here, and identify a "[i]ndicia of a specific, concrete interest" of the State in the case. *Id.* In so doing, the Court may consider "the extent to which the challenged conduct injures the state 'as a whole,' and the extent to which the complaint seeks 'substantial relief that is available to [the state] alone.'" *Cnty. of San Mateo*, 644 F. Supp. 3d at 571 (quoting *Nevada,* 672 F.3d at 672 and *Lucent*, 642 F.3d at 738, 739).

1. **The State "as a whole" has no specific, concrete interest in the outcome of the case.**

The City Attorney's Complaint lacks any such "indicia of a specific, concrete interest" held by the State "as a whole." The Complaint alleges no identifiable harm to California, its economy, or its government arising from Defendants' actions. The contrast between this case and *Nevada*, on

1    which the City Attorney relies, is instructive.  In *Nevada*, plaintiff sued not only to protect individual

2    homeowners deceived by the defendant, but also "those affected by the impact of Bank of America's

3    alleged frauds *on Nevada's economy*."  672 F.3d at 670 (emphasis added).  This broader, statewide

4    impact of the foreclosure crisis was alleged to affect "other Nevada residents and the Nevada

5    economy as a whole."  *Id.*  These allegations of harm to the entire public, as opposed to just those

6    who dealt directly with the defendant, were crucial in establishing the state as the real party in

7    interest.  *Id.*  Indeed, the plaintiff in *Nevada* recited facts establishing the value of statewide home

8    equity lost due to foreclosures of neighboring homes, the impact of the foreclosure crisis on Nevada

9    as compared to other states, and the "widespread and devastating" ripple effects on the state

10   economy.  *Id.* at 670-71.  The City Attorney alleges nothing remotely like that.  Indeed, he alleges

11   ***no*** facts suggesting that Defendants' alleged conduct has harmed the State's economy in any way.

12            While the Complaint includes vague allegations of injury to "hundreds" of consumers, these

13   are insufficient to establish the State as the real party in interest, for at least two reasons.  *First*, these

14   allegations are rooted in unverified online complaints and articles rather than the City Attorney's

15   own investigation.  Few if any of these complaints even purport to be from California residents.

16   And of the six purported California residents, five received refunds from InComm, as demonstrated

17   by the Complaint and its incorporated sources.  (The sixth might have received a refund; it is not

18   clear.)  Thus, the Complaint does not allege in non-conclusory fashion that California consumers

19   have been injured at all, much less that they have been injured in large numbers.

20            *Second*, even if the Complaint had identified a significant pool of affected California

21   consumers, allegations of harm to *a group of individuals within the State* is not sufficient to make

22   *the State* the real party in interest.  Unlike in *Nevada*, the Complaint contains no allegation that the

23   State's resources or economy have been harmed, that Californians beyond the cardholders

24   themselves have been harmed, that the California retail market has suffered, or even that the State

25   has expended resources on investigating the conduct.  Absent such allegations of systemic harm to

26   the State as a whole, the City Attorney cannot show that the State is the real party in interest.

27

28   Defendant InComm's Opposition to Plaintiff's Motion to Remand (Case No. 23-cv-06456)
                                               -13-

Courts have concluded as much under similar circumstances.  For example, in *Northern Trust*, the court rejected the argument that the State was the real party in interest, despite plaintiff's allegations that defendant's practices affected the pensions of some 43,000 California employees, because the interests of those individual employees were distinct from the interests of the State itself. 2012 WL 12888851, at *4. Here, even if the Complaint alleged harm to California consumers (which it does not), it lacks allegations that Defendants' business practices have any broader impact whatsoever on *the State itself* as an entity.  As in *Northern Trust*, this omission defeats the City Attorney's claim to represent the State's interests.

Indeed, the post-*Lucent* UCL cases that the City Attorney cites show the type of impact on the State itself that is entirely lacking here.  Remand Mot. at 15-16.  In *Purdue Pharma,* the State was found to be the real party in interest where the complaint alleged that "Defendants have created an 'epidemic' jeopardizing the health and safety of *all Californians*—both through direct harm to opioid users and *indirect harm to communities* in the form of increased crime rates, hospital utilization, joblessness and broken families."   2014 WL 6065907, at *3 (emphasis added). Similarly, the court in *HomeAway* noted that the suit sought to protect Californians from "business practices that contribute to a *statewide* housing crisis" by "securing a marketplace free from unlawful business practices that reduce the availability of long-term housing and contribute to increased rents." 2023 WL 2497862, at *4 (emphasis added).  These cases thus alleged something more than injury to a particular group of citizens; they claimed systemic injury to California's economy and society.  The same is true of the other, non-UCL cases that the City Attorney relies upon.  Remand Mot. at 16.  *See, e.g., Cnty. of San Mateo,* 644 F. Supp. 3d at 571 (suit to abate environmental contamination that "injured California as a whole" where "California is *directly harmed* by ongoing pollution") (emphasis added); *Washington v. Facebook, Inc.*, No. C18-1031JLR, 2018 WL 5617145, at *5 (W.D. Wash. Oct. 30, 2018) (citing State interest "in ensuring the fairness and transparency of state elections").   These cases underscore the commonsense

proposition that, absent some allegation of injury to statewide interests as opposed to individual ones, the State cannot be the real party in interest.

The Complaint here lacks any such allegation of systemic statewide harm. Its vague claims that "hundreds" of unspecified individuals within California have been harmed are insufficient to establish injury to the State. Accordingly, the Complaint flunks the *Lucent* test. *See Bates v. Mortg. Elec. Registration Sys., Inc.,* 694 F.3d 1076, 1080 (9th Cir. 2012) (finding that although the relator in a *qui tam* suit claimed to be bringing claim on behalf of the counties and the state of California, the district court had diversity jurisdiction because plaintiff "failed to point to any allegation in his complaint" supporting his claim to sue on the State's behalf.)

The City Attorney also makes an ancillary argument that it is "irrelevant" whether the Complaint alleges any harm to California consumers, because the UCL authorizes local prosecutors to sue even in the absence of actual injury to consumers. Remand Mot. at 17, n.3. But that argument confuses the issue of statutory *standing* (*i.e.*, whether Plaintiff can state a claim even in the absence of actual injury) with the jurisdictional question whether the State is the *real party in interest*. Even if Plaintiff has statutory standing to bring a UCL claim in the absence of harm to *individual Californians*, the State is not the real party in interest unless the suit vindicates some interest of the *State of California*. Because it does not, the City Attorney cannot claim to be bringing suit on the State's behalf.

### 2.     The relief sought primarily benefits San Francisco, not the State.

Just as the Complaint does not implicate any interest of the State, it also claims no relief on the State's behalf. "The **central factor** in determining the real party in interest is which party stands to receive the benefit of the requested relief." *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.,* No. C073747PJH, 2007 WL 2947421, at *2 (N.D. Cal. Oct. 9, 2007), *aff'd,* 642 F.3d 728 (9th Cir. 2011) (emphasis added). Here, the City and County of San Francisco is the real party in interest because it, rather than the State, stands to benefit from the relief sought. Any civil penalties would be paid *exclusively* to the city and county treasuries of San Francisco, not to the State. Although the

1   Complaint seeks restitution and injunctive relief on behalf of the (unidentified) aggrieved

2   consumers, it does not give any indication of who these consumers are or how numerous they are.

3   And even if it did, as set forth above, those forms of relief would still benefit the individual

4   consumers rather than the State "as a whole."

5        Because the requested relief would provide no discernible benefit for the State, this suit fails

6   to meet the requirement that "the relief sought is that which inures to [the State] alone." *Lucent*, 642

7   F.3d at 737 (quoting *Missouri Railway*, 183 U.S. at 59); *see also Bates*, 694 F.3d at 1080 (state was

8   not a real party in interest in a *qui tam* relator case where "the State would not realize any benefit

9   as a result" of the suit).  Despite this controlling authority, the City Attorney dismisses Defendants'

10  argument as to the utter absence of any benefit to the State as a "canard," citing three district court

11  decisions where the State was found to be the real party in interest even though the penalties would

12  be paid to a local government.  Remand Mot. at 17.  Crucially, however, each of those cases *also*

13  implicated a compelling State interest of the sort that is entirely absent here.  *See HomeAway*, 2023

14  WL 2497862, at *4 (observing that the challenged business practices "contribute to a statewide

15  housing crisis"); *Purdue*, 2014 WL 6065907 at *1 (defendants' marketing "has led to an 'epidemic'

16  of opioid abuse, constituting a public nuisance"); *In re Facebook*, 354 F. Supp. 3d at 1123

17  (allegations of exploitation of personal data of the state's citizens to influence presidential election).

18  In light of those interests, the fact that civil penalties would be paid to local governments was found

19  not to be dispositive of the "real party in interest" question.  Contrary to the City Attorney's

20  suggestion, however, none of these cases holds that the beneficiary of the civil penalties is *irrelevant*

21  to that question.

22       Here, the Complaint neither advances a legitimate State interest *nor* seeks relief on the

23  State's behalf.  Under these circumstances, this Court need not and should not overlook the fact that

24  San Francisco is the only party that stands to benefit from the suit.  Such an approach would be

25  inconsistent with *Lucent*, which emphasized that a suit must seek "relief . . . which inures to [the

26  State] alone" for the State to be the real party in interest.  642 F.3d at 737 (*quoting Missouri Railway*,

27

28       Defendant InComm's Opposition to Plaintiff's Motion to Remand (Case No. 23-cv-06456)
                                      -16-

1   183 U.S. at 59).  Accordingly, the reality that San Francisco is the only discernible beneficiary has

2   obvious relevance to the *Lucent* analysis.  Indeed, one federal court has found this factor to be

3   controlling, and concluded that where the local government plaintiff would obtain all monetary

4   penalties, the "relief sought would not inure to the benefit of the state alone" as required by *Lucent*.

5   *In re Avandia,* 238 F. Supp. 3d at 730.

6         The City Attorney also attempts to minimize the fact that San Francisco stands to receive all

7   civil penalties by noting that San Francisco must use these monies to enforce consumer protection

8   laws.  But the earmarking of funds for a particular use *by San Francisco* is not equivalent to

9   providing a benefit *to the State*.  Indeed, the California Attorney General has questioned whether

10  counties actually use proceeds from UCL suits in a way that benefits the State, in an amicus brief

11  described in *Abbott Labs. v. Superior Ct. of Orange Cnty.*, 9 Cal. 5th 642 (2020).  There, the

12  Attorney General warned that UCL suits filed by city attorneys nominally on behalf of the State

13  could create "'conflicts of interest' between local prosecutors' responsibility to statewide victims,

14  to whom they are not politically accountable, and their own incentives *to secure a greater share of*

15  *available remedies for local constituencies.*"  *Id.* at 660 (emphasis added).  Although the California

16  Supreme Court concluded in that case that the legislature authorized local prosecutors to seek

17  statewide relief, that does not invalidate the Attorney General's doubts as to whether penalties paid

18  to local governments truly serve the State's interests in every case.

19        Such doubts are particularly salient here, where San Francisco has pursued an unorthodox

20  approach to gift card fraud by pinning the blame on the entities that distribute and service these

21  products.  As noted above, many jurisdictions in California and beyond have opted instead to

22  prosecute the criminals who are directly responsible for gift card fraud.  San Francisco's demand

23  for civil penalties operates at cross-purposes with that approach, by diverting Defendants' resources

24  away from fraud prevention and relief, while allowing the criminals responsible for gift card fraud

25  to evade responsibility.  Although San Francisco is entitled to pursue its own idiosyncratic policy

26  choices, it cannot claim the mantle of "the State" when doing so, absent a showing that the State's

27

28  Defendant InComm's Opposition to Plaintiff's Motion to Remand (Case No. 23-cv-06456)
    -17-

interests are at stake in the suit.  Nor can it claim that the rewards of those choices will flow to the State as a whole.  For this reason, too, San Francisco rather than the State is the true party in interest.

## V.     CONCLUSION

For the foregoing reasons, the City Attorney's remand motion should be denied.

Dated:        February 16, 2024

Respectfully submitted,

_____/s/ Jane Metcalf_____

PATTERSON BELKNAP WEBB & TYLER LLP
Jane Metcalf (admitted *pro hac vice*)
jmetcalf@pbwt.com
Henry J. Ricardo (admitted *pro hac vice*)
hjricardo@pbwt.com
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

LAFAYETTE & KUMAGAI LLP
Gary T. Lafayette (SBN 88666)
Brian H. Chun (SBN 215417)
1300 Clay Street, Suite 810
Oakland, California 94612
Tel. 415.357.4600
bchun@lkclaw.com

*Attorneys for Defendant InComm Financial Services, Inc.*