**BRYAN CAVE LEIGHTON PAISNER LLP**
Daniel Rockey, Cal. Bar No. 178604
Anna Donald (Cal. Bar No. 352006)
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4070
Telephone:    (415) 675 3400
Facsimile:    (415) 675 3434
E-mail: daniel.rockey@bclplaw.com

Christine Cesare (pro hac vice)
E-mail: christine.cesare@bclplaw.com

Attorneys for Defendant
Pathward N.A.

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, acting by and through San Francisco City Attorney DAVID CHIU, <br><br> Plaintiff, <br><br> v. <br><br> INCOMM FINANCIAL SERVICES, INC.; TBBK CARD SERVICES, INC.; SUTTON BANK; PATHWARD N.A.; and DOES 1 through 10, <br><br> Defendant. | Case No. 3:23-cv-06456-WHO <br><br> **DEFENDANT PATHWARD NA's OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** <br><br> Hearing Date:  March 13, 2024 <br> Time:          2:00 P.M. <br> Place:         Courtroom 2, 17th Floor |

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION .................................................................................................................. 5

II.  BACKGROUND .................................................................................................................... 6

III. Removal was proper on grounds of diversity jurisdiction because the City and County of San Francisco is the real party in interest ............................................................ 7

   A.   An interest in the general welfare of its citizens is insufficient to make the State the real party in interest for purposes of diversity jurisdiction. ...................... 8

   B.   On balance, the relief sought in this action is not unique to the State ................... 11

IV.  CONCLUSION .................................................................................................................... 16

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*California v. HomeAway.com, Inc.*,
   No. 2:22-CV-02578-FLA (JPRx), 2023 WL 2497862 (C.D. Cal. Mar. 14, 2023) ................................................................................................................................ 9, 11

*California v. Purdue Pharma*,
   2014 WL 6065907 (C.D. Cal. Nov. 12, 2014) ....................................................................... 9

*City & Cnty. of San Francisco v. PG & E Corp.*,
   433 F.3d 1115 (9th Cir.2006) .............................................................................................. 14

*Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*,
   642 F.3d 728 (9th Cir. 2011) ......................................................................................... passim

*Ex parte State of Nebraska*,
   209 U.S. 436 (1908) .............................................................................................................. 7

*In re Avandia Mktg*,
   238 F. Supp. 3d at 730 ..................................................................................... 10, 14, 15, 16

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
   354 F. Supp. 3d 1122 (N.D. Cal. 2019) ......................................................................... 10, 13

*People ex rel. Feuer v. FXS Management, Inc.*
   2 Cal. App. 5th 1154 (2016) ............................................................................................... 12

*Hawaii, ex rel. Louie v. Bristol-Myers Squibb Co.*,
   No. 14-00180-HG-RLP, 2014 WL 3427387 (D. Haw. July 15, 2014) .............................. 9, 13

*Missouri, Kan. and Tex. Ry. Co. v. Hickman*,
   183 U.S. 53 (1901) ................................................................................................................ 8

*Moor v. Alameda Cnty.*,
   411 U.S. 693 (1973) ............................................................................................................ 11

*Navarro Sav. Ass'n v. Lee*,
   446 U.S. 458 (1980) .............................................................................................................. 8

*Nevada v. Bank of Am. Corp.*,
   672 F.3d 661 (9th Cir. 2012) ......................................................................................... passim

*Ramirez v. Fox Television Station, Inc.*,
   998 F.2d 743 (9th Cir. 1993) ................................................................................................. 7

*Washington v. Facebook, Inc.*,
    No. C18-1031JLR, 2018 WL 5617145 (W.D. Wash. Oct. 30, 2018) ................................. 9, 11

**Statutes**

28 U.S.C. § 1332 ............................................................................................................... 7, 8, 16

28 U.S.C. § 1441 ...................................................................................................................... 5, 7

28 U.S.C. § 1446 ........................................................................................................................... 7

Cal. Bus. & Prof. Code, § 17200 ............................................................................................. 6, 12

Cal. Bus. & Prof. Code, § 17203 ..................................................................................... 12, 13, 14

Cal. Bus. & Prof. Code, § 17204 ................................................................................................. 12

Cal. Bus. & Prof. Code, § 17206 ........................................................................................... 14, 15

Cal. Bus. & Prof. Code, § 17535 ................................................................................................. 12

Cal. Civ. Code § 1748.31 ........................................................................................................... 6, 7

Cal. Civ. Code § 1750 ................................................................................................................... 7

Cal. Civ. Code, § 1780 ................................................................................................................ 12

**Other Authorities**

https://www.sfcityattorney.org/2023/11/20/city-attorney-sues-maker-of-vanilla-
    gift-cards-over-consumer-scams/ (last accessed Feb. 12, 2024) ............................................ 14

https://www.sfcityattorney.org/wp-content/uploads/2019/04/A-Practical-Guide-to-
    Affirmative-Litigation-FINAL-4.13.19-1.pdf (last accessed February 14, 2024) .............. 5, 15

I.      INTRODUCTION

The Complaint in the instant action was filed in San Francisco Superior Court by San Francisco City Attorney, David Chiu, purportedly on behalf of the People of the State of California ("City Attorney"). Defendant InComm Financial Services, Inc. ("InComm") removed pursuant to 28 U.S. Code § 1441 on diversity grounds on the basis that the City and County of San Francisco, and not the State of California, is the real party in interest. The City Attorney moves to remand, but fails to demonstrate that the State has *any* specific, concrete interest in the litigation beyond a broad, undifferentiated interest in the enforcement of its laws — an interest the courts have consistently held is insufficient to warrant remand. In fact, the City and County of San Francisco stands to benefit concretely and directly from the relief sought in this suit, which includes statutory penalties that are paid directly and would inure entirely to San Francisco's benefit. Notably, the City Attorney's argument here, that San Francisco "is not pursuing any claims on its own behalf or seeking any relief that inures to the benefit of the City as an entity," stands in stark contrast to his own prior public statements regarding the objectives of "local affirmative litigation," such as the suit here. In "*Local Action, National Impact:  A Practical Guide to Affirmative Litigation for Local Governments*,"[1] the City Attorney himself explained that "the key goal of a local affirmative litigation practice is to **benefit the community and the local jurisdiction**" and that "affirmative litigation offers an opportunity for localities to proactively address their ***own interests*** and the interests of their communities."[2]  These statements, and others, constitute a tacit acknowledgment that suits like this are driven not by a desire to benefit the State as an entity, or even the People of the State more broadly, and instead are driven entirely by local interests. The City Attorney's arguments here ask this Court to ignore this fundamental reality, and instead rely entirely on the legal fiction that the suit is brought in the name of the People, but in *Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*[3] and *Nevada v. Bank of Am. Corp.*,[4] the Ninth Circuit made clear that a state's generic, "quasi-sovereign,"

---

[1] https://www.sfcityattorney.org/wp-content/uploads/2019/04/A-Practical-Guide-to-Affirmative-Litigation-FINAL-4.13.19-1.pdf (last accessed February 14, 2024) ("Local Action").
[2] *Id.*, p. 14, 19 (emphasis modified).
[3] 642 F.3d 728, 737 n.2, 738 (9th Cir. 2011).
[4] 672 F.3d 661, 672 (9th Cir. 2012).

5

OPP. TO MOTION TO REMAND
CASE NO. 3:23-CV-06456-WHO

interest in enforcing its laws is insufficient to make the State a real party to the controversy. As the City Attorney identifies no state interest beyond San Francisco's quasi-sovereign interest in enforcement of state law, his motion to remand should be denied.

## II.     BACKGROUND

On November 9, 2023, the City Attorney commenced this action by filing a Complaint in the Superior Court for the State of California for the County of San Francisco. The Complaint was filed by San Francisco City Attorney, David Chiu, purportedly on behalf of the People of the State of California. (Compl. ¶ 8.) In addition to InComm, a South Dakota Corporation headquartered in Georgia (Compl. ¶ 9), the Complaint names as a defendant Pathward N.A., a federally chartered bank, identifying it as a Delaware Corporation headquartered in South Dakota (Complaint ("Compl.") ¶ 12.), as well as TBBK Card Services, Inc. ("TBBK"), a South Dakota corporation headquartered in South Dakota, and which is a subsidiary of The Bancorp Bank, a federally chartered bank headquartered in Delaware (Compl. ¶ 10); and Sutton Bank, an Ohio corporation headquartered in Ohio (Compl. ¶ 22).

The City Attorney's claims in this case relate to "Vanilla" branded nonreloadable gift cards ("Vanilla Cards"), which are sold and serviced by InComm, and issued by Pathward, IBBK, and Sutton Bank (the "Bank Defendants." (Compl. ¶¶ 9–12.) The Complaint alleges that some Vanilla Card consumers have fallen victim to a practice called "card draining," in which third-party criminals tamper with packaged Vanilla Cards prior to purchase, record the card information, and use the information to access the funds once the card is activated. (Compl. ¶¶ 2–4.) The Complaint further alleges that other prepaid gift card packaging has different security features than the Vanilla Card packaging. Finally, the Complaint cites online stories about consumers who were frustrated by how long they had to wait for a refund from InComm after being victimized by fraud. On this basis, the City Attorney alleges that InComm has failed to implement appropriate security controls and misrepresented the security of its packaging and availability of refunds for defrauded consumers. (Compl. ¶¶ 3-6, 120(c).)

The Complaint also claims that Defendants have imposed liability for unauthorized transactions in violation of Cal. Civ. Code § 1748.31, which limits debit cardholder liability for

1  unauthorized charges. (Compl. ¶¶ 120(a)–(b).) The Complaint asserts claims under each prong of

2  California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code. §§ 17200, *et seq.*, the

3  "unlawful" component of which alleges violations of California's Consumers Legal Remedies

4  Act, Cal. Civ. Code §§ 1750 *et seq*. and Cal. Civ. Code § 1748.31. Among other forms of relief,

5  Plaintiff seeks an injunction, restitution, civil penalties, and costs. (Compl. at pp. 41–42.)

6        On December 14, 2023, InComm timely removed this action pursuant to 28 U.S.C. §§

7  1332, 1441, and 1446 from San Francisco Superior Court, based on diversity jurisdiction. On

8  January 30, 2024, the City Attorney filed a Motion to Remand for lack of subject matter

9  jurisdiction on the grounds that the real party is the State of California, which is not a resident of

10  California for purposes of diversity.

11  **III.  ARGUMENT**

12      **A.  Removal was proper on grounds of diversity jurisdiction because the City and County of San Francisco is the real party in interest**

13

14        Removal of a civil action to federal district court is proper where the federal court would

15  have original jurisdiction over the state court action. 28 U.S.C. § 1441(a); *Ramirez v. Fox*

16  *Television Station, Inc*., 998 F.2d 743, 747 (9th Cir. 1993) (citing 28 U.S.C. § 1441(a), (b)).

17  Where, as here, jurisdiction is premised upon diversity of citizenship, the defendant must

18  establish the substantive requirements of 28 U.S.C. § 1332—the action is between diverse parties

19  and that the amount in controversy exceeds $75,000. The City Attorney does not dispute that the

20  amount in controversy exceeds $75,000, thus that factor is not at issue. Rather, he argues that

21  diversity of citizenship does not exist because the State is not a citizen for purposes of diversity

22  jurisdiction. However, as the Ninth Circuit has held "'the mere presence on the record of the state

23  as a party plaintiff will not defeat the jurisdiction of the Federal court when it appears that the

24  state has no real interest in the controversy.'" *Lucent*, 642 F.3d at 737 (quoting *Ex parte State of*

25  *Nebraska*, 209 U.S. 436, 444 (1908)). A state legislature "cannot possess the ability to defeat

26  federal jurisdiction under 28 U.S.C. § 1332(a)(1), over an action between what would otherwise

27  be two diverse citizens, merely by enacting legislation pursuant to its police powers." *Lucent*, 642

28  F.3d at 739 n.6. Thus, the fact that the California legislature has bestowed upon the San Francisco

City Attorney the ability to bring suits on behalf of the "People of the State of California" under the UCL does not destroy diversity jurisdiction.

In *Lucent,* the Ninth Circuit set forth two factors courts must consider when determining whether a state is a real party to the controversy for purposes of diversity jurisdiction: (1) whether the state has a "specific" and "concrete" interest in the litigation, as opposed to a "quasi-sovereign," "general governmental interest[]," in enforcing state laws; and (2) whether the relief sought by the state is unique—*i.e.*, "inures to it alone"—and "substantial," as opposed to "tangential." *Lucent*, 642 F.3d at 737–39; *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 670–71 (9th Cir. 2012). Applying these factors to this action, it is apparent that the real party in interest is the City and County of San Francisco, which is a citizen of California for diversity jurisdiction purposes and is diverse from all Defendants, none of whom are citizens of the state of California. Thus, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a)(1).

**B.     An interest in the general welfare of its citizens is insufficient to make the State the real party in interest for purposes of diversity jurisdiction**

It is well established that "the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy . . ." and "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61 (1980) (citations omitted). Under governing Ninth Circuit law, determining whether the State is a real party to the controversy for diversity purposes is a fact-based inquiry that requires "looking at the case as a whole." *Nevada*, 672 F.3d at 670 (quoting *Lucent*, 642 F.3d at 740). In the Ninth Circuit, a state's interest in the general welfare of its citizens and interest in upholding enforcement of its laws does not make it a real party whose "presence" defeats diversity jurisdiction. *See Lucent*, 642 F.3d at 737 (quoting *Missouri, Kan. and Tex. Ry. Co. v. Hickman*, 183 U.S. 53, 60 (1901)). As the Ninth Circuit explained in *Lucent*:

> although 'the State has a governmental interest *in the welfare of all its citizens*, in compelling obedience to the legal orders of all its officials, and *in securing compliance with all its laws*,' these 'general governmental interest[s]' will not *satisfy* the real party to the controversy requirement for the purposes of defeating

        diversity because 'if that were so the state would be a party in interest in all litigation ….'

*Lucent*, 642 F.3d at 737 (emphasis added) (quoting *Missouri, Kan. and Tex. Ry. Co. v. Hickman*, 183 U.S. 53, 60 (1901)).

        Under the standards of *Lucent* and *Nevada* this action was properly removed, for it fails to allege any "specific, concrete interest" of the State in the outcome of the case. Unlike the cases cited and relied on by San Francisco, neither the Complaint nor the Motion to Remand contains any allegation whatsoever that the allegedly unlawful practices have caused harm or will continue to cause harm to the *State*. For example, it does not allege that the practices have harmed the State's economy or government processes. *See California v. HomeAway.com, Inc.,* No. 2:22-CV-02578-FLA (JPRx), 2023 WL 2497862, at *4 (C.D. Cal. Mar. 14, 2023) (finding there to be a concrete State interest in "protect[ing] the general public from Defendant's business practices that contribute to a *statewide* housing crisis" (emphasis added)); *Hawaii, ex rel. Louie v. Bristol-Myers Squibb Co.*, No. 14-00180-HG-RLP, 2014 WL 3427387, at *9 (D. Haw. July 15, 2014) (holding that "[t]he State ha[d] a specific, concrete interest in protecting its citizens and economy from false, unfair and deceptive practices related to prescription drugs"); *Washington v. Facebook, Inc.*, No. C18-1031JLR, 2018 WL 5617145, at *4 (W.D. Wash. Oct. 30, 2018) (stating that the "[t]he State ha[d] a declared interest in 'assur[ing] continuing public confidence of fairness of [state] elections and governmental processes'"). Nor does it allege, for example, that the practices have caused harm to California businesses or threatened the health and safety of citizens statewide. *See California v. Purdue Pharma*,[5] 2014 WL 6065907 at *3 (C.D. Cal. Nov. 12, 2014) (finding that the complaint alleged that the defendants had "created an 'epidemic' jeopardizing the health and safety of all Californians—both through direct harm to opioid users and indirect harm to communities in the form of increased crime rates, hospital utilization, joblessness and broken families. . . . California's interest in ending this alleged state of affairs is a far cry from the 'general governmental interest[s]' present in *Lucent* and much more akin to the

---

[5] As discussed in more detail below, the cases San Francisco relies on here are further distinguishable because, unlike this action, the remedies sought in these cases "inure[d] to the State alone" thus satisfying the second factor in *Lucent*.

'specific, concrete' interest the State of Nevada had in remedying the wide-ranging effects of the mortgage and foreclosure crisis in *Nevada*").

In San Francisco's own words, "[t]he State of California . . . has a compelling interest in this litigation to enforce and uphold its consumer protection laws." (Motion at 14:5–7). Such generalized statements—reflecting an interest in only a broad category of laws—are the same type of vague and imprecise interests that the *Lucent* court rejected as evidence sufficient to establish the State's interest for diversity purposes. In *Lucent*, the Ninth Circuit determined that the State's interest in protecting its citizens from employment discrimination was too "general" to render the State an interested party in the controversy. *Lucent*, 642 F.3d at 738. Similarly, the generalized interests alleged by Plaintiff are precisely the interests that *Lucent* determined were insufficient to make the State the real party in interest. Indeed, San Francisco's arguments actually match those rejected by the *Lucent* court, making them readily distinguishable from the authorities the City Attorney relies upon in his Motion.

Rather than setting forth a particularized State interest, Plaintiff relies on the fact that the UCL grants statutorily authorized representatives the power to bring claims on behalf of the People of California. While courts will consider this factor when determining the real party in interest, it is not dispositive of the issue, as the City Attorney appears to suggest. For example, in *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig*., a Pennsylvania district court applying *Lucent* and *Nevada* to California's False Advertising Law ("FAL") determined that the real party in interest was the County of Santa Clara even though the FAL specifically authorizes the County to bring actions on behalf of the People of the State of California. 238 F. Supp. 3d 723 (E.D. Pa. 2017). The court ultimately determined that the *Lucent* and *Nevada* analysis compelled a finding that the real party in interest was the County. *Id.* at 729. *In re Avandia* demonstrates that the fact that California has conferred power on local agency counsel to initiate litigation in the name of the State does not, by itself, make the State the real party in interest. *See also In re Facebook, Inc., Consumer Priv. User Profile Litig*., 354 F. Supp. 3d 1122, 1133 (N.D. Cal. 2019) ("Of course, the fact that [the Cook County State Attorney] ha[d] state law authority to represent the interests of Illinois in a statewide consumer fraud action d[id] not automatically mean that . . .

Illinois [was] the real party in interest for purposes of federal jurisdiction."). While the statutory framework is a factor to consider, it is not dispositive when, as here, the State does not have an interest in the outcome of the case sufficient to satisfy the first factor of *Lucent*.

Here, the City Attorney attempts to show the kind of undifferentiated statewide impact present in *HomeAway.com, Purdue Pharma,* and *Facebook*, by referencing the presence of thousands of complaints on the Better Business Bureau webpage for InComm, as well as various media reports concerning pre-paid card scams (Compl., ¶¶ 43–47). However, the City Attorney fails to show what portion of any such complaints are from California citizens (or even pertain to Vanilla pre-paid cards) and the media reports are from outlets nationwide. Nothing about these vague and scattershot allegations demonstrates that the State of California has a specific, concrete interest in the outcome of the litigation apart from its broad interest in the enforcement of its laws.

Indeed, to the extent the Complaint identifies any real party in interest, that party is the City and County of San Francisco. According to the Complaint, "Defendants are engaging in unlawful, unfair, and fraudulent business practices *in San Francisco*" (Compl. ¶ 15) (emphasis added) and "some of the unlawful conduct *occurred in San Francisco*." (Compl. ¶ 16) (emphasis added). Thus, because the City and County of San Francisco—which is a citizen of California for purposes of diversity jurisdiction—is the real party in interest, this action was properly removed. *Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973) ("[A] political subdivision of a State, unless it is simply 'the arm or alter ego of the State, is a citizen of the State for diversity purposes.").

**C.     On balance, the relief sought in this action is not unique to the State**

The second factor in determining whether the State is the real party in interest centers on the remedies sought. *See Lucent*, 642 F.3d at 737; *see also Nevada*, 672 F.3d at 670. A state's interest in a lawsuit will render it a putative real party in interest "only if 'the relief sought is that which inures to [the state] alone . . . .'" *Lucent*, 642 F.3d at 737. An important element in this analysis is whether the relief sought is "available to [the State] alone" and not to individual consumers. *Nevada*, 672 F.3d at 672. This second *Lucent* factor also weights in favor of the City and County of San Francisco being the real party in interest because San Francisco, or San Francisco citizens, stand to reap the rewards of the suit.

In this action, Plaintiff seeks an injunction, restitution, and civil penalties. (Compl. at pp. 41–42.) The Ninth Circuit emphasized in *Nevada* that the question of whether the state is the real party in interest must be answered by "looking at the case as a whole," and by examining "the essential nature and effect of the proceeding as it appears from the entire record." *Nevada*, 672 F.3d at 670. Thus, it is important to weigh the various remedies sought in order to determine who stands to benefit from a favorable outcome.

Looking first to the injunctive relief,[6] *Lucent* supports a conclusion that the injunctive relief sought here is not available to the State alone. In *Lucent*, the plaintiff argued that the State was the real party in interest because it sought equitable relief. *Lucent*, 642 F.3d at 739. The Ninth Circuit held that the defendant's claim that the "equitable remedies constitute a substantial state interest is unavailing, as most of these forms of equitable relief could be obtained by the individual aggrieved." *Id.* Similarly here, injunctive relief is not exclusive to the state alone, but is instead available to any person who has suffered damages, or a loss of money or property from acts alleged in the Complaint pursuant to the Consumer Legal Remedies Act, the False Advertising Law, or the Unfair Competition Law. *See* Civ. Code, § 1780 ("Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain any of the following:…(2) An order enjoining the methods, acts, or practices. (3) Restitution of property."); Bus. & Prof. Code, § 17535 ("Actions for injunction under this section may be prosecuted by … any … city attorney… or by any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter."); Bus. & Prof. § 17203, 17204 ("Actions for relief," including injunctive relief, [may be brought by] a city attorney of a city having a population in excess of 750,000, or a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."). And although the courts have suggested that a more deferential standard applies where a government entity seeks

---

[6] Specifically, Plaintiff seeks to "[e]njoin Defendants, their successors, agents, representatives, employees, and any and all other persons who act in concert or participation with Defendants by permanently restraining them from performing or proposing to perform any acts in violation of Business and Professions Code section 17200, including, but not limited to, the acts and practices alleged in this Complaint[.]" (Compl. at 41.)

preliminary injunctive relief,[7] the City Attorney does not seek preliminary injunctive relief and the foregoing consumer protection statutes place injured consumers on the same footing with respect to seeking injunctive relief as the City Attorney. Thus, the City Attorney cannot show that injunctive relief would inure uniquely to its benefit. This factor therefore weighs against a finding that the State is the real party in interest.

The City Attorney also seeks restitution on behalf of consumers whose funds were allegedly drained by third party criminals (Compl., Prayer, "Order Defendants to pay in restitution to California consumers all funds, with interest, unlawfully received or acquired by Defendants by means of any practice that constitutes unfair competition, under the authority of Business and Professions Code sections 17203."). Although the court in *Nevada* suggested that the state's interest in the case was "not diminished merely because it ha[d] tacked on a claim for restitution…," in so holding the court also emphasized, "[t]he state's strong and distinct interest in [the] litigation," including that it sought "substantial relief that is available to it alone," such as enforcement of a prior consent judgement. *Nevada*, 672 F.3d at 671–72. This suggests that, while a claim for restitution, on its own, is not dispositive of the issue, it is a factor that weighs against the State being the real party in interest and should be viewed in conjunction with the other remedies when determining the real party in interest. This analysis also aligns with the post-*Lucent/Nevada* cases cited by the City Attorney. For example, in *Hawaii, ex rel. Louie*, the court specifically noted that the claim for disgorgement in that case "d[id] not alter the essential nature of the proceedings as a whole" because "[d]isgorgement to obtain ill-gotten gains is separate and apart from the interests of particular consumers in obtaining restitution for their payments," thus, clearly suggesting that a claim for restitution would have changed the court's analysis. *Hawaii, ex rel. Louie v. Bristol-Myers Squibb Co.* (D. Hawaii, July 15, 2014, No. CIV. 14-00180 HG-RLP) 2014 WL 3427387, at *10. Likewise, in *In re Facebook*, Judge Chhabria noted that the lawsuit "did not even seek restitution on behalf of Illinois Facebook users" but that "doing so likely would not have been a deal-killer, as the Nevada case shows." 354 F. Supp. 3d at 1136. Again, these decisions demonstrate that, although a claim for restitution on behalf of local residents is

---

[7] *People ex rel. Feuer v. FXS Management, Inc.,* 2 Cal. App. 5th 1154, 1158 (2016).

not, on its own, dispositive, it is a factor that weighs against finding that the State is the real party in interest. Consequently, San Francisco's claim for restitution plainly weighs against any finding that the State is the real party in interest here.

Further supporting this conclusion is the fact that any restitution will not be paid to the state itself or inure to Californians more generally, but instead to the individual consumers. In holding that a claim for restitution did not diminish Nevada's strong and distinct interest in the litigation, the Ninth Circuit emphasized that under Nevada law, the restitution, "while on behalf of its consumers, would first be paid to the State and distributed on an equitable basis." *Nevada*, 672 F.3d at 671. *See also City & Cnty. of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1126 (9th Cir.2006) ("In this case, as in every case involving restitution, a successful result for the governmental entities may well result in money being paid to private parties.... However, the ... restitution claims filed by the governmental entities in this case are fundamentally law enforcement actions designed to protect the public."). The claims brought by the City Attorney here likewise authorize him to seek restitution on behalf of consumers, but include no requirement that such funds be paid to the State for equitable distribution to consumers. *See, e.g.*, *compare* Bus. & Prof. § 17203 (restitution) with § 17206 (directing that portion of civil penalties recovered be paid to the state). Furthermore, the City Attorney himself has made clear that restitution for individuals allegedly harmed by the practices alleged in the Complaint was not merely "tacked on" to a suit aimed at enforcing a consent judgement, as in *Nevada*, it is primary objective of the lawsuit. In launching the instant suit, the City Attorney issued a press release, announcing:

> As we kick off the holiday season, we are filing this lawsuit to sound the alarm, compel Incomm to adopt industry-standard security features to stop card draining, and obtain restitution for consumers who have been harmed.

*See* "City Attorney sues maker of Vanilla gift cards over consumer scams."[8] Thus, this case is more analogous to *In re Avandia Mktg*, where the court determined that under *Lucent* and

---

[8] https://www.sfcityattorney.org/2023/11/20/city-attorney-sues-maker-of-vanilla-gift-cards-over-consumer-scams/ (last accessed Feb. 12, 2024).

*Nevada*, the City and County was the real party in interest because the benefits of the relief sought would not inure to the State alone. 238 F. Supp. 3d at 730 ("Though the complaint initially sought restitution on behalf of the People of California, this restitution would go to individuals who had suffered harm, not to the state itself or to the entire California population . . . . Thus, the relief sought would not inure to the benefit of the state alone").

The City Attorney does seek civil penalties, which are not available to consumers suing under the CLRA, UCL, or FAL. However, in contrast to *Nevada*, the entirety of those civil penalties will not be paid to the State, but rather to the City and County of San Francisco. Cal. Bus. & Prof. Code § 17206 (f) ("If the action is brought by a city attorney of a city and county, the entire amount of the penalty collected shall be paid to the treasurer of the city and county in which the judgment was entered for the exclusive use by the city attorney for the enforcement of consumer protection laws."). It is difficult to square this bounty-like provision, which confers 100% of the financial recovery from civil penalties to the city treasurer, with the fiction that the City of San Francisco has no interest in the litigation distinct from that of the State. The purpose of looking to the real party in interest, and not the nominal plaintiff, is to consider who *actually* benefits from the suit. It requires donning blinders to conclude that the relief sought here would inure not to the City, but to the State. *See In re Avandia Mktg,* 238 F. Supp. 3d at 730 ("Plaintiff insists that [the initial complaint] is incorrect in stating that the civil penalties sought in this case would benefit the County, arguing instead that any such penalties would benefit the public. However, the statute is clear that the entire amount of any civil penalties collected would go to the County treasury to aid in enforcement of consumer protection laws. . . .").

Indeed, the City Attorney's own statements make clear that a primary purpose of such "affirmative litigation" is to benefit local, and not statewide, interests. In 2019, the City Attorney published a document entitled "*Local Action, National Impact:  A Practical Guide to Affirmative Litigation for Local Governments*."[9] In *Local Action*, he emphasized that "affirmative litigation can help localities recover significant revenue," and that a primary motivation for such litigation

---

[9] https://www.sfcityattorney.org/wp-content/uploads/2019/04/A-Practical-Guide-to-Affirmative-Litigation-FINAL-4.13.19-1.pdf (last accessed February 14, 2024) ("Local Action").

is to benefit local government's "own interests," not the interests of the State:

> [A]ffirmative litigation offers an opportunity for localities to proactively address their ***own interests*** and ***the interests of their communities***. Local governments can stop ongoing harms and provide restitution to victims, push state and federal actors to better protect residents, and force companies to uphold their legal obligations. They ***represent their communities' interests*** by investigating wrongdoing and addressing legal violations through the court system.

*Id.*, p. 5 (emphasis added). The City Attorney also asserted that a primary objective of such suits is to address "local problems… harming residents":

> [B]y bringing cases as plaintiffs, local offices retain autonomy to address local problems in the way they believe will be most effective. As a plaintiff, the local office can set the agenda for solving problems in its community by articulating the legal theories to address illegal practices harming residents and proposing specific remedies for those harms.

*Id*. And in contrast to the City Attorney's suggestion here that he seeks to vindicate the undifferentiated interests of the State as a whole, in *Local Action,* he advised local governments to "[p]ursue cases that have a nexus to your residents. At heart, the mission of your office is local…." *Id.*, p. 14; *see also id.* ("[G]enerate cases by examining what issues cause harm both to the locality directly and also to the public—your constituency—more broadly."); *id.* ("Grounding litigation in local harm will also justify the affirmative litigation work that your office does."). The City Attorney summed up the purpose of affirmative litigation by declaring that "the key goal of a local affirmative litigation practice is to benefit the community and the local jurisdiction." *Id.*, p. 19. These statements vividly help to illustrate the fiction that such suits are intended to benefit the State or seek statewide relief. The real party in interest here is not the State of California, but the City Attorney, pursuing local interests and the recovery of funds for local coffers. Thus, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a)(1).

**IV.   CONCLUSION**

Because the real party in interest in this action is City and County of San Francisco, Defendant InComm properly removed this action pursuant to the rules governing diversity

1  jurisdiction. For the foregoing reasons, Pathward respectfully requests that this Court deny

2  Plaintiff's Motion to Remand.

Dated: February 16, 2024                    Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: _____

Daniel Rockey

Attorneys for Defendant
PATHWARD N.A.