1   DAVID CHIU, SBN 189542
    City Attorney
2   YVONNE R. MERÉ, SBN 173594
    Chief Deputy City Attorney
3   SARA J. EISENBERG, SBN 269303
    Chief of Complex and Affirmative Litigation
4   JOHN H. GEORGE, SBN 292332
    DAVID S. LOUK, SBN 304654
5   Deputy City Attorneys
    Fox Plaza
6   1390 Market Street, 6th Floor
    San Francisco, CA  94102-5408
7   Telephone:    (415) 554-4223
    Facsimile:    (415) 437-4644
8   E-Mail:       John.George@sfcityatty.org
                  David.Louk@sfcityatty.org
9
    Attorneys for Plaintiff
10  PEOPLE OF THE STATE OF CALIFORNIA, acting by
    and through San Francisco City Attorney DAVID CHIU
11

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14

15  PEOPLE OF THE STATE OF CALIFORNIA,          Case No. 3:23-cv-06456-WHO
    acting by and through San Francisco City
16  Attorney DAVID CHIU,                        **PLAINTIFF'S REPLY IN SUPPORT OF
                                                MOTION TO REMAND**
17          Plaintiff,
                                                Hearing Date:    March 13, 2024
18          vs.                                 Time:            2:00 p.m.
                                                Place:           Courtroom 2, 17th Floor
19  INCOMM FINANCIAL SERVICES, INC.;
    TBBK CARD SERVICES, INC.; SUTTON            Trial Date:      N/A
20  BANK; and PATHWARD N.A.,

21          Defendants.

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................3

INTRODUCTION ......................................................................................................................5

ARGUMENT ...............................................................................................................................6

    I.      CALIFORNIA, NOT SAN FRANCISCO, IS THE REAL PARTY
           IN INTEREST ...........................................................................................7

           A.     This Action Protects the Public's Well-Being and Ensures A Fair
                 Marketplace Free from False, Unfair, and Deceptive Practices .................8

           B.     The UCL's Delegation of Enforcement to the San Francisco
                 City Attorney Confirms the State's Interests Here ......................................9

           C.     The Relief Sought Is Unique to the People's Action and Benefits
                 the State...........................................................................................10

    II.     DEFENDANTS FAIL TO ESTABLISH DIVERSITY JURISDICTION ...........14

           A.     Defendants' Efforts to Justify Removal with Motion-to-Dismiss and
                 Motion-for-Summary-Judgment Arguments Should Be Rejected ...........14

            B.     Neither *Northern Trust* Nor *In re Avandia* Establish
                 Diversity Jurisdiction Here .......................................................................16

CONCLUSION...........................................................................................................................19

1

2

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Super. Ct. of Orange Cnty.*
  9 Cal. 5th 642 (Cal. 2020)...........................................................................12

*Acad. of Country Music v. Cont'l Cas. Co.*
  991 F.3d 1059 (9th Cir. 2021) ......................................................................6

*Blakely v. Bayer Corp.*
  2010 WL 11597579 (C.D. Cal. Mar. 10, 2010)..........................................15

*City & Cnty. of San Francisco v. PG&E Corp.*
  433 F.3d 1115 (9th Cir. 2006) ...................................................................7, 9

*Clark v. InComm Fin. Servs., Inc.*
  2023 WL 8522952 (C.D. Cal. Dec. 1, 2023) ..............................................14

*Cnty. of San Mateo v. Monsanto Co.*
  644 F. Supp. 3d 566 (N.D. Cal. 2022) ..........................................................9

*Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*
  642 F.3d 728 (9th Cir. 2011) ....................................................7, 9, 15, 16

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*
  463 U.S. 1 (1983)...........................................................................................6

*Gaus v. Miles, Inc.*
  980 F.2d 564 (9th Cir. 1992) .........................................................................6

*Goldberg v. CPC Int'l, Inc.*
  495 F. Supp. 233  (N.D. Cal. 1980) ............................................................15

*Hawaii, ex rel. Louie v. Bristol-Myers Squibb Co.*
  2014 WL 3427387 (D. Haw. July 15, 2014) ...........................................8, 11

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*
  238 F. Supp. 3d 723 (E.D. Pa. 2017) .................................................6, 16, 18

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*
  354 F. Supp. 3d 1122 (N.D. Cal. 2019) ...............................................*passim*

*In re TFT–LCD (Flat Panel) Antitrust Litig.*
  2011 WL 560593 (N.D. Cal. Feb. 15, 2011) .................................................8

*Nevada v. Bank of America Corp.*
  672 F.3d 661 (9th Cir. 2012) ...............................................................*passim*

*People ex rel. Feuer v. FXS Mgmt., Inc.*
   2 Cal. App. 5th 1154 (Cal. App. 2016) ...................................................................12

*People of the State of Cal. v. HomeAway.com, Inc.*
   2023 WL 2497862 (C.D. Cal. Mar. 14, 2023) ................................................. *passim*

*People of the State of Cal. v. Northern Trust Corp.*
   2012 WL 12888851 (C.D. Cal. Dec. 19, 2012) ..................................................6, 16

*People of the State of Cal. v. Northern Trust Corp.*
   2013 WL 1561460 (C.D. Cal. Apr. 10, 2013) .........................................................17

*People of the State of Cal. v. Purdue Pharma L.P.*
   2014 WL 6065907 (C.D. Cal. Nov. 12, 2014) .................................................. *passim*

*People of the State of Cal. v. Universal Syndications, Inc.*
   2009 WL 1689651 (N.D. Cal. June 16, 2009) .......................................10, 11, 13, 14

*People v. Pac. Land Rsch. Co.*
   20 Cal. 3d 10 (Cal. 1977) ...........................................................................................9

*Tate v. Fresenius USA, Inc.*
   2013 WL 12133850 (C.D. Cal. Sept. 4, 2013) .........................................................15

**Statutes & Codes**

California Business & Professtions Code
   § 17200 .........................................................................................................................9
   § 17206(a) ...................................................................................................................10
   § 17206(c)(1) ..............................................................................................................12
   § 17206(f) ...................................................................................................................11

California Code of Civil Procedure
   § 731 ...........................................................................................................................10

California Government Code
   § 12651 .......................................................................................................................17
   § 12652 .......................................................................................................................17

**INTRODUCTION**

For the past three decades, courts in the Ninth Circuit have consistently remanded consumer protection and similar actions brought by public prosecutors on behalf of their states for lack of diversity jurisdiction. This case is no different. The State of California is the real party in interest, and diversity jurisdiction therefore does not exist. The City Attorney, on behalf of the People of the State of California and pursuant to his authority to bring statewide Unfair Competition Law ("UCL") claims, brings this case to vindicate well-established State interests: the protection of Californians and the California economy from false, unfair, and deceptive practices related to prepaid debit cards. The relief sought – civil penalties uniquely available to the People and a statewide injunction protecting all California consumers – benefit the State and further establish its status as the real party in interest.

Defendants InComm and Pathward, resisting the weight of nearly uniform authority supporting remand, raise several irrelevant and repeatedly rejected arguments. *See* ECF Nos. 30 (InComm's opposition); 31 (Pathward's).[1] None of their arguments is sufficient to support their high burden to demonstrate federal jurisdiction.

First, Defendants argue that diversity jurisdiction is established because the Complaint's allegations are insufficiently pleaded and that Defendants' version of any disputed fact assertions should be accepted as true. But Defendants here oppose a Motion to Remand – they cannot raise motion-to-dismiss or summary-judgment arguments at this stage. Defendants' disputes as to the nature and veracity of Plaintiff's well-pleaded allegations are therefore simply an irrelevant distraction. Along similar lines, Defendants claim diversity jurisdiction exists unless Plaintiff sufficiently pleads allegations of "systemic harm" to the State as a whole, a "legal standard" of Defendants' invention not adopted by any court. And in any event, Plaintiff's Complaint clearly alleges widespread harm to California consumers across the State.

Second, Defendants claim San Francisco's receipt of civil penalties transforms the City and County into the real party in interest notwithstanding that California law intentionally sets forth such a

---

[1] InComm's and Pathward's arguments in opposition largely overlap, with the exception of arguments related to injunctive relief and restitution, which Pathward alone raises.

framework and requires the money be spent on State interests. Moreover, *every* court in the Ninth Circuit to examine this argument has rejected it. Similarly, Defendants assert that restitution, which is paid to victims of their wrongdoing, somehow undermines the State's interest. Not so. This argument too has a long, consistent history of rejection in this Circuit.

Last, precisely because Defendants cannot demonstrate that this case falls outside the long line of authority finding jurisdiction lacking in substantially similar situations, they instead rely on two clearly inapposite precedents. These authorities – *People of the State of Cal. v. Northern Trust Corp.*, 2012 WL 12888851, at *1 (C.D. Cal. Dec. 19, 2012) and *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 238 F. Supp. 3d 723 (E.D. Pa. 2017) – are easily distinguishable; one has been heavily criticized in this District, and neither has not been followed. *See infra* Section II.B. Given Defendants' failure to justify removal, this Court should remand the action back to California Superior Court.

## ARGUMENT

The Ninth Circuit "strictly construe[s] against removal jurisdiction," rejecting federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1061 (9th Cir. 2021). Where, as here, "an action has been brought by a state or one of its officials or subdivisions, the need to resolve doubts against the exercise of federal jurisdiction is particularly acute" because "'considerations of comity' should make federal courts 'reluctant to snatch cases which a State has brought from the courts of that State, unless some *clear rule* demands it.'" *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 354 F. Supp. 3d 1122, 1124 (N.D. Cal. 2019) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 21 n.22 (1983)) (emphasis added). Defendants have failed to show that a clear rule demands the exercise of federal jurisdiction over this action. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."). Far from it. The Ninth Circuit and every judge in this District to have considered a similar lawsuit brought by a public prosecutor on behalf of the People has easily found the State to be the real party in interest and therefore remanded the action for lack of diversity jurisdiction.

This case is no different, and each relevant factor identified in *Nevada v. Bank of America Corp.*, 672 F.3d 661 (9th Cir. 2012), demonstrates that California is the real party in interest: a suit brought by a public prosecutor on behalf of the State; a substantial state interest in the outcome; relief available only to the State; and a lower burden to seek injunctive relief. Plaintiff, pursuant to its authority to bring statewide Unfair Competition Law claims, seeks to prevent harm to consumers across California from Defendants' misrepresentations and unlawful conduct and to ensure an honest marketplace for all prepaid cards. Plaintiff also seeks to prevent the personal, emotional, and societal harms that result from the unexpected loss of money, the embarrassment of unexpectedly declined cards at cash registers, and the shame and social discomfort of giving or receiving prepaid debt cards that have $0 balances on them. These are all well-established State interests. The People also seek relief available to it alone, relief which furthers the State's interest in preventing harm to consumers and which inures to the benefit of *all* Californians. San Francisco, by contrast, will receive no particular benefit apart from that enjoyed by all of California. *See City & Cnty. of San Francisco v. PG&E Corp.*, 433 F.3d 1115, 1126 (9th Cir. 2006) (a UCL action by the government "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties") (cited favorably in *Nevada*, 672 F.3d at 671). The People are the real party in interest and, as such, the parties are not diverse and the action should be remanded.

## I.       CALIFORNIA, NOT SAN FRANCISCO, IS THE REAL PARTY IN INTEREST

Diversity jurisdiction does not exist where the state is the real party in interest. *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 737 (9th Cir. 2011). To determine whether the state is a real party in interest, courts look "at the case as a whole" and examine "the essential nature and effect of the proceeding as it appears from the entire record." *Nevada*, 672 F.3d at 670 (quoting *Lucent*, 642 F.3d at 740). The "overall test is whether the government official or entity's lawsuit would primarily vindicate state interests and primarily obtain relief for the state, rather than serving primarily parochial interests and obtaining parochial relief." *In re Facebook, Inc.,* 354 F. Supp. 3d at 1129. *Nevada* and this District's cases before and since demonstrate that the People's UCL case against Defendants "vindicate[s] state interests" and primarily seeks relief for the state. *Id.*

### A.    This Action Protects the Public's Well-Being and Ensures a Fair Marketplace Free from False, Unfair, and Deceptive Practices

The People's case vindicates the very State interests – enforcement of consumer protection laws to ensure a fair marketplace and to protect the public's economic and social well-being – that many courts, including *Nevada*, have recognized as specific, concrete interests establishing the State as the real party in interest.

Indeed, *Nevada* clearly illustrates that California's interest in enforcing the UCL and securing an honest marketplace and the economic well-being of California citizens renders the State the real party in interest.  In rejecting the argument that individual consumers rather than the State were the real party in interest, the Ninth Circuit relied on, and quoted *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 2011 WL 560593, at *5 (N.D. Cal. Feb. 15, 2011), which found that "'the States of California and Washington are the real parties in interest because both States have *a sovereign interest in the enforcement of their consumer protection* and antitrust laws ... [and] in securing an honest marketplace and the economic well-being of their citizens.'" *Nevada*, 672 F.3d at 671 (emphasis added). California has precisely the same interest here that the Ninth Circuit recognized in *Nevada*. The People's case, just like *In re TFT–LCD*, alleges a violation of the UCL and seeks to protect citizens' economic well-being by ensuring that money on their prepaid debit cards will be there when they need it or they will be issued a prompt refund, as well as by securing an honest marketplace where consumers are not mislead and injured, and prepaid card companies that invest in proper security, issue refunds expeditiously, and tell the truth are not at a disadvantage. *See* ECF No. 1-1, Ex. B ("Complaint"), ¶¶2-7, 94-96, 103-111, pp. 41–42 (alleging in detail how consumers are misled and harmed and praying for relief); *see also Hawaii, ex rel. Louie v. Bristol-Myers Squibb Co.*, 2014 WL 3427387, at *1, *9 (D. Haw. July 15, 2014) (finding the "State has a specific, concrete interest in protecting its citizens and economy from false, unfair and deceptive practices" where the Attorney General brought claims, like those here, "for false, deceptive, and unfair marketing"); *People of the State of Cal. v. HomeAway.com, Inc.*, 2023 WL 2497862, at *2 (C.D. Cal. Mar. 14, 2023) (finding state interest in UCL action brought on behalf of People by L.A. City Attorney because "[t]he public has a substantial and specific interest in enforcing consumer protection laws"); *In re Facebook, Inc.*,

354 F. Supp. 3d at 1131 (recognizing the "importance" of the state's interest in "combating consumer fraud" through enforcement of Illinois's analogue to California's UCL).

**B.    The UCL's Delegation of Enforcement to the San Francisco City Attorney Confirms the State's Interests Here**

In determining whether the state is the real party in interest, "courts consider the substantive state law." *Lucent*, 642 F.3d at 738. Here, the UCL – the substantive law at issue – not only reflects the State's substantial interest in protecting Californians' well-being, economic and otherwise, and securing honest markets, it allows particular public prosecutors, like the City Attorney here, to bring civil actions on behalf of the State itself. According to both the California Supreme Court and the Ninth Circuit, "a civil action brought by a governmental entity under [Cal. Bus. & Prof. Code §] 17200 is 'fundamentally a law enforcement action designed to protect the public and not to benefit private parties.'" *See PG & E Corp.*, 433 F.3d at 1125-26 (9th Cir. 2006) (quoting *People v. Pac. Land Rsch. Co.*, 20 Cal. 3d 10, 17 (Cal. 1977)).[2]

As numerous California district courts have found, the Legislature's delegation of enforcement authority strongly supports finding the State is the real party in interest. *See HomeAway.com, Inc.*, 2023 WL 2497862, at *2  ("Here, the court finds that the State is the real party in interest for several reasons. First, the California legislature authorized city attorneys of cities . . . such as Los Angeles . . . to bring civil enforcement actions on behalf of the People."); *People of the State of Cal. v. Purdue Pharma L.P.*, 2014 WL 6065907, at *3 (C.D. Cal. Nov. 12, 2014) ("*Lucent* and *Nevada* compel the conclusion that the People of the State of California—and therefore the State itself—are the real party in interest in this case. UCL and FAL actions brought by local prosecutors are brought 'in the name of the people of the State of California.' And as the substantive state law makes clear, the 'People of the State' and 'The State' are descriptive of the same sovereignty.") (cleaned up); *Cnty. of San Mateo v. Monsanto Co.*, 644 F. Supp. 3d 566, 571 (N.D. Cal. 2022) ("First, the applicable substantive law

---

[2] The Ninth Circuit in *Nevada* relied on this very principle from *PG&E* to support its conclusion that Nevada's interest in the litigation remained "substantial" – and therefore it remained the real party in interest – even though some individuals may eventually recover restitution. *Nevada*, 672 F.3d at 671 (citing *PG & E Corp.*, 433 F.3d at 1126).

indicates that California is a real-party-in interest. To combat a public nuisance, California Code of Civil Procedure § 731 authorizes 'the district attorney or county counsel of any county in which the nuisance exists, or ... the city attorney of any town or city in which the nuisance exists' to bring a suit 'in the name of the people of the State of California.'"). Courts in this Circuit have consistently found the same with respect to analogous consumer protection statutes with delegated public enforcement regimes. *See Nevada*, 672 F.3d at 670 ("Nevada—not the individual consumers—is the real party in interest in this controversy. Nevada brought this suit pursuant to its statutory authority under the DTPA [Deceptive Trade Practices Act] because of its interest in protecting the integrity of mortgage loan servicing. . . . [T]here is no doubt that the Attorney General has statutory authority to pursue such claims."); *In re Facebook*, 354 F. Supp. 3d at 1136 ("The point is that she [the county prosecutor] has the right, on behalf of the State of Illinois, to assert these [consumer protection] claims and attempt to vindicate these interests. Overall, this is the embodiment of a state enforcement action brought in the public interest. Therefore, Illinois is the real party in interest for diversity purposes.").[3]

### C.     The Relief Sought Is Unique to the People's Action and Benefits the State

Here, just as in *Nevada* and many of the other cases that have found the State is the real party in interest, the People seek "substantial relief that is available to it alone," 672 F.3d at 672 – civil penalties – and statewide injunctive relief that "will provide a benefit to all of the citizens of the state," *People of the State of Cal. v. Universal Syndications, Inc.*, 2009 WL 1689651, at *5 (N.D. Cal. June 16, 2009). The relief sought by the People further demonstrates that California is the real party in interest.

*Civil Penalties*: The People seek civil penalties for each of Defendants' violations. Complaint at p. 42. This relief is unavailable to private litigants and unique to actions brought on behalf of the State. *See* Cal. Bus. & Prof. Code § 17206(a). And any civil penalties received must be used to

---

[3] InComm inaccurately contends that the People argue for an "un-rebuttable presumption" that California is the real party in interest when the City Attorney sues on its behalf (ECF No. 30 at 11 n.4). But the cases cited above – all of which apply *Lucent* and *Nevada* – conclude the state was the real party in interest based largely on the very fact that the public prosecutor was suing on behalf of the State pursuant to its statutory authority to do so. Although not dispositive, this fact strongly supports finding the State is the real party in interest.

advance the State's interest in further consumer protection actions – none of it can go to the City's general fund to be used for anything else. *Id.* § 17206(f). Courts overwhelmingly find that the pursuit of civil penalties supports finding the State is the real party in interest. *See Nevada*, 672 F.3d at 671–72 ("The state's strong and distinct interest in this litigation is further strengthened by the other forms of relief it seeks. . . . [I]t seeks civil penalties under the DTPA, which are not available to individual consumers."); *Hawaii, ex rel. Louie*, 2014 WL 3427387 at \*9 ("The forms of relief sought by the State of Hawaii support the finding that it is the real party in interest. Just as the plaintiff in *Nevada v. Bank of America Corp.*, the State seeks civil penalties that are not available for individual consumers."); *HomeAway.com, Inc.*, 2023 WL 2497862 at \*2–3 ("Here, the court finds that the State is the real party in interest for several reasons. . . . Second, Plaintiff seeks relief for the State in the form of statutory penalties and an injunction under the UCL."); *Purdue Pharma L.P.*, 2014 WL 6065907 at \*3 ("As in *Nevada*, Plaintiff seeks remedies available only to it—civil penalties under the UCL and FAL."); *In re Facebook, Inc.*, 354 F. Supp. 3d at 1135–36 ("[T]his case does not come close to the line, because it's clear that [the county prosecutor's] lawsuit serves primarily the interests of the State of Illinois. The lawsuit seeks civil penalties that private citizens could not obtain – penalties that would punish fraud against Illinois residents and deter future similar wrongdoing in the State."); *Universal Syndications, Inc.*, 2009 WL 1689651 at \*5 ("California plainly has a substantial interest in the outcome of the instant litigation. . . . In addition, the potential civil penalties appear to outweigh any restitution, as each individual penalty is an order of magnitude greater than the individual purchase price of Defendants' product.").

InComm's attempt to distinguish these cases fails. First, InComm is incorrect that each case's analysis of civil penalties was only relevant because each case "*also* implicated a compelling State interest" absent here. ECF No. 30 at 16. Rather, as *Nevada* illustrates, each factor speaking to the State as the real part in interest is assessed independently and no one factor is dispositive. 672 F.3d at 671 (analyzing relief separately from state interest, which was "further strengthened," not dependent on, the relief sought). Precisely to this end, decisions citing *Nevada* set the civil-penalties analysis apart as a fully distinct and enumerated reason for finding the State was the real party in interest. *See In re*

*Facebook*, 354 F. Supp. 3d at 1136 (identifying the distinct reasons supporting the State's interest, including that the "lawsuit seeks civil penalties that private citizens could not obtain"); *HomeAway.com, Inc.*, 2023 WL 2497862 at *2–3 ("Here, the court finds that the State is the real party in interest for several reasons. . . . Second, Plaintiff seeks relief for the State in the form of statutory penalties."); *Purdue Pharma L.P.*, 2014 WL 6065907 at *3 ("The relief sought in this case *also* compels the conclusion that the State of California is the real party in interest."). Moreover, each of these cases found that civil penalties supported a finding that the State was the real party in interest, regardless of whether the penalties were to be directed to a local government entity.

Without legal support, the best InComm can do is point to a speculative argument raised by the California Attorney General in an *amicus* brief suggesting that *some* local public prosecutors *might* misuse civil penalties and settle cases on the cheap despite their legal and ethical obligations. ECF No. 30 at 17. But the California Supreme Court flatly rejected this unsupported allegation, and this Court should not entertain InComm's secondhand attempt to revive it. *Abbott Labs. v. Super. Ct. of Orange Cnty.*, 9 Cal. 5th 642, 660-61 (Cal. 2020) (noting that "neither the legislative record nor the briefing before us points to any concrete or widespread problems" to justify this purely "abstract" concern, which the State legislature also rejected several times when amending the UCL).[4]

*Injunctive Relief*: The People also seek injunctive relief to prevent further harm to Californians and ensure consumers, including any potential future purchasers and recipients of Vanilla prepaid debit cards, will not continue to be misled, injured, and defrauded. Compl. at p. 41. Just as in *Nevada*, the applicable standard for seeking injunctive relief is lower for the People than for a private litigant. *Nevada*, 672 F3d at 672 ("a state or government agency need only show . . . a reasonable likelihood that the statute was violated"); *People ex rel. Feuer v. FXS Mgmt., Inc.*, 2 Cal. App. 5th 1154, 1158 (Cal. App. 2016) (an injunction issues "[w]here a governmental entity seeking to enjoin the alleged violation of an ordinance which specifically provides for injunctive relief establishes that it is

---

[4] The concern about local misuse is also undercut by a similar division of receipts even in UCL cases brought *by the Attorney General*, which requires that "one-half of the penalty collected shall be paid *to the treasurer of the county in which the judgment was entered*." Cal. Bus. & Prof. Code § 17206(c)(1) (emphasis added).

reasonably probable it will prevail on the merits"). Precisely because injunctive relief benefits the entire State and can be obtained by public prosecutors more readily than by private parties, courts have regularly pointed to efforts to seek and obtain injunctive relief as supporting a finding that the state is the real party in interest. *See Nevada*, 672 F3d at 671–72 ("The state's strong and distinct interest in this litigation is further strengthened by the other forms of relief it seeks," including "injunctive relief"); *HomeAway.com, Inc.*, 2023 WL 2497862 at *2–3 ("Here, the court finds that the State is the real party in interest for several reasons. . . . [including that] Plaintiff seeks relief for the State in the form of statutory penalties and an injunction under the UCL."); *Purdue Pharma L.P.*, 2014 WL 6065907 at *3 ("The relief sought in this case also compels the conclusion that the State of California is the real party in interest. . . . [A]s in *Nevada*, Plaintiff seeks injunctive relief that is subject to a lesser evidentiary standard than for private individuals."); *Universal Syndications, Inc.*, 2009 WL 1689651 at *5 ("California plainly has a substantial interest in the outcome of the instant litigation. If the People prevail, the injunctive remedies they obtain will provide a benefit to all of the citizens of the state."); *In re Facebook, Inc.*, 354 F. Supp. 3d at 1135–36 ("[I]t's clear that [the county prosecutor's] lawsuit serves primarily the interests of the State of Illinois. . . . It seeks statewide injunctive relief to prevent future violation of the privacy rights of a large and diffuse group of Illinois residents.").

Pathward raises the uncontested, but irrelevant, fact that private parties can also seek injunctions for violations of the UCL and Consumer Legal Remedies Act. ECF No. 31 at 12. This fact was well known to the Ninth Circuit in *Nevada* and the many other courts cited above that found that injunctive relief supports a finding of the States as the real party in interest. Pathward asserts that the lower standard for public prosecutors seeking injunctive relief applies only to preliminary injunctions, which it claims the People do not seek. But none of the cases that found injunctive relief supported the State as the real party in interest, including *Nevada*, identify the plaintiffs as seeking a preliminary injunction. Pathward does not cite any case to support its contention that this distinction matters for the real-party-in-interest analysis, and regardless, a preliminary injunction can be sought at any time before judgment.

Pathward's argument is further undermined by InComm's relentless attempts to dismiss putative class action lawsuits brought by individual cardholders by arguing that individual plaintiffs are not entitled to seek injunctive relief. *See Clark v. InComm Fin. Servs., Inc.*, 2023 WL 8522952, at *1, *9 (C.D. Cal. Dec. 1, 2023) (denying, after previously granting, InComm's motion to dismiss the injunctive relief claims on standing grounds – an argument inapplicable to the People). InComm's assertions elsewhere that individual consumers may not seek injunctive relief against it thus perfectly illustrates the uniquely important and delegated role for public prosecutors under the UCL to ensure false, deceptive, and unfair business practices can be curtailed on a Statewide basis. Defendants' self-serving efforts to discount the State's unique ability to seek injunctive here, while simultaneously seeking elsewhere to ensure no private plaintiffs can do the same, should be rejected.

Pathward's remaining attempts to undercut the State's interest in the relief sought also fail. First, it raises the risible argument that selectively quoted assertions contained in a litigation guidebook coauthored by a prior City Attorney and three national institutional authors in 2019 somehow prove Plaintiff's Complaint here is "driven entirely by local interests." ECF No. 31 at 5. Along similar lines, Pathward argues, incorrectly, that the People's effort to seek restitution weighs against the State being the real party in interest here. ECF No. 31 at 13. But as noted, case after case has held that seeking restitution does not detract from the finding that the State is the real party in interest, especially where, as here, the amount of restitution is likely eclipsed by any probable award of civil penalties. *See, e.g.*, *Nevada*, 672 F.3d at 671; *Purdue Pharma L.P.*, 2014 WL 6065907 at *4; *Universal Syndications, Inc.*, 2009 WL 1689651 at *5. Nor is Plaintiff's press announcement explaining to the lay public the Complaint's prayer for relief somehow revelatory of – let alone legally creditable evidence as to – the "primary objective of the lawsuit." ECF No. 31 at 14.

## II.     DEFENDANTS FAIL TO ESTABLISH DIVERSITY JURISDICTION

### A.     Defendants' Efforts to Justify Removal with Motion-to-Dismiss and Motion-for-Summary-Judgment Arguments Should Be Rejected

Precisely because Defendants' arguments against the existence of the State's interest have no merit, their opposition largely smuggles in improper arguments that Plaintiff has failed to state a claim

or establish a triable issue of material facts. InComm attacks the sufficiency of the Complaint's

allegations and tries to raise material factual disputes, but these baseless arguments belong, if

anywhere, in a motion to dismiss or motion for summary judgment. *See* ECF No. 30 at 3-6 (claiming

the allegations are "conclusory"); 13-14 (disputing consumer complaints as "unverified" and attacking

the allegations' sufficiency). InComm's arguments are wholly irrelevant and improper at this stage, for

"[e]ven assuming that Plaintiff's allegations are insufficient under federal pleading standards, all

doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically

defective pleading must be resolved in favor of remand." *Blakely v. Bayer Corp.*, 2010 WL 11597579,

at *3 (C.D. Cal. Mar. 10, 2010). Numerous courts in this district have batted away improper attempts

to convert removal efforts into motions to dismiss. *See Tate v. Fresenius USA, Inc.*, 2013 WL

12133850, at *3 (C.D. Cal. Sept. 4, 2013) ("If Plaintiff's motion to remand is meritorious, the Court

lacks jurisdiction to determine the sufficiency of Plaintiff's allegations."); *Goldberg v. CPC Int'l, Inc.*,

495 F. Supp. 233, 237 n.3 (N.D. Cal. 1980) ("The fact that defendant has the option to attack the

sufficiency of the Doe allegations does not support a conclusion that those allegations may be

disregarded for jurisdictional purposes."); *cf. In re Facebook, Inc.*, 354 F. Supp. 3d at 1136 (N.D. Cal.

2019) (remanding consumer action brought by Illinois and noting that "we don't yet know if [the

county prosecutor's] claims have merit, but that's not the point").

       Defendants also gesture broadly at language in *Lucent* and *Nevada* to advance a clearly

erroneous legal standard that they then claim the People's supposedly insufficient pleadings do not

satisfy. This is no basis to find jurisdiction. InComm argues the "Complaint lacks any such 'indicia of

a specific, concrete interest' held by the State 'as a whole.'" ECF No. 30 at 12 (quoting, without citing,

*Nevada*, 672 F.3d at 670), 17 ("Absent such allegations of systemic harm to the State as a whole, the

City Attorney cannot show that the State is the real party in interest."). But neither *Nevada* nor *Lucent*

said anything about, let alone require, "systemic harm to the State as a whole."[5] Rather, as the Ninth

Circuit explained in *Nevada*, "in *Lucent* we adopted the approach of looking *at the case as a whole* to

determine the real party in interest, rather than the claim-by-claim approach." 672 F.3d at 670. To

---

[5] *Lucent* never uses the phrase "specific, concrete interest."

concoct the notion that a State cannot be the real party without "systemic harm to the State as a whole," InComm compounds its misreading of *Lucent* and *Nevada* with misinterpretations of *Purdue Pharma L.P.*, 2014 WL 6065907, at *3 and *HomeAway.com, Inc.*, 2023 WL 2497862, at *2. *See* ECF No. 30 at 10. Those cases, too, never mention systemic harm or injury, let alone require it. In fact, *HomeAway* involved alleged violations of a *local* ordinance requiring short-term rentals to address a housing shortage and other harms "in *the City's* residential neighborhoods." *HomeAway.com, Inc.*, 2023 WL 2497862, at *1.

Indeed, the thrust of InComm's opposition is simply to contest and diminish Plaintiff's allegations of harm – a wholly improper dispute at this stage. For example, InComm focuses on, and contests, the allegations that it improperly fails to refund cardholders whose money is stolen. ECF No. 30 at 13. But even if this dispute were appropriate for resolution here (it isn't), InComm ignores the Complaint's well-pleaded allegations of consumers' harm that stems solely from having their cards fraudulently drained in the first place (*e.g.*, ¶¶ 106-108, 111), to say nothing of buying prepaid cards with undisclosed security flaws (*e.g.*, ¶¶ 94-103), legally insufficient refund policies (*e.g.*, ¶ 105), and being deprived of the use of money that is rightfully the cardholder's, including for critical expenses like utilities or rent (*e.g.*, ¶¶ 109-110). Moreover, Plaintiff alleges that InComm's negligent practices have repeatedly exposed California consumers to shame, embarrassment, and inconvenience – all cognizable harms the UCL was enacted to remediate.  When "the case as a whole" is considered, the State's specific, concrete interest in protecting both its citizens its and economy from false, unfair and deceptive practices related to prepaid debit cards is readily apparent. *Nevada*, 672 F.3d at 670.

**B.      Neither *Northern Trust* Nor *In re Avandia* Establish Diversity Jurisdiction Here**

At best, Defendants can rely only on two inapposite cases from outside this District in their attempt to establish diversity jurisdiction. *See* ECF Nos. 30 at 10–11, 14, 17 (citing *Northern Trust Corp.*, 2012 WL 12888851 at *1, and *In re Avandia.*, 238 F. Supp. 3d 723); 31 at 10, 14–16 (citing *In re Avandia*). These decisions, which appear to be the only ones finding diversity jurisdiction in cases *nominally* alleging UCL claims by public prosecutors, are nothing like the case at hand and do not establish diversity jurisdiction here.

*Northern Trust*, which was an action to vindicate the interests of a single private entity, is readily distinguishable. There, after the Los Angeles City Employees' Retirement System ("LACERS") suffered losses on certain investments, the L.A. City Attorney sued the bank and investment advisor with which LACERS contracted to handle its investments. *Northern Trust*, 2012 WL 12888851, at *1. The plaintiff brought a California False Claims Act – which may only be brought by a political subdivision on its own individual behalf and not on behalf of the People, *see* Cal. Govt. Code §§ 12651-12652 – and a UCL claim to recover the money LACERS lost as a result of the defendants' alleged misconduct, which was specific to LACERS and not alleged to affect consumers at large. *Id.* at *1–3. The complaint, despite being stylized as on behalf of the People, "was filed on behalf of a single entity—LACERS," the "claims [did] *not* arise from practices affecting consumers in general," and the defendants' practices "relate[d] solely to their contractual relationship with LACERS, a highly specialized entity, and not to their conduct in the wider marketplace vis à vis consumers as a whole." *Id.* at *3. The court accordingly concluded that LACERS was the real party in interest in light of the alleged private harm, the nature of the relief – treble damages under the False Claims Act, $95 million in restitution, and comparatively miniscule civil penalties – and the fact that relief would overwhelming benefit LACERS alone and not the public. *Id.* at *4–5. Just a few months later, the same court remanded the plaintiff's UCL claim to state court after finding that maintaining jurisdiction would deprive it of the ability to litigate the claim. *People of the State of Cal. v. Northern Trust Corp.*, 2013 WL 1561460, at *4 (C.D. Cal. Apr. 10, 2013).

*Northern Trust* could hardly be more dissimilar to the People's case here – a law enforcement action with no proprietary claims brought to protect the economic well-being of *all* California consumers and to impose civil penalties and state-wide injunctive relief that will benefit all.[6] Nor does

---

[6] For the same reason, *Northern Trust* does not support InComm's assertion that "allegations of harm to a group of individuals within the State is not sufficient to make the State the real party in interest." ECF No. 30 at 13. If that were the rule, there would be federal jurisdiction any time a consumer protection complaint brought by the State put forward allegations of harm to a subset of individuals within the State – a result at odds with the caselaw. *See, e.g.*, *Nevada*, 672 F.3d at 665–66 (alleging harm to *mortgagees* who relied on defendants' false statements about mortgage servicing); *In re Facebook, Inc.*, 354 F. Supp. 3d at 1123 (alleging harm to *Facebook users* whose data was improperly shared).

*Northern Trust*, which *no* other court has relied on to find federal jurisdiction, undermine the

consistent line of authority finding diversity lacking in UCL actions filed on behalf of the People to

protect consumers across the State.

   *In re Avandia* also provides no support for Defendants' position. Not only has that Eastern

District of Pennsylvania decision been strongly criticized as wrongly decided, but it, like *Northern

Trust*, has not been relied on by any decision in this Circuit to find diversity jurisdiction. *In re Avandia*

addressed what the court described as an "unusual situation: five years into this litigation, in a case

that was filed in—rather than removed to—federal court, Plaintiff filed a Motion to Dismiss the case

for lack of subject matter jurisdiction, claiming that the parties were not completely diverse." *In re

Avandia*, 238 F. Supp. 3d at 724. In refusing to apply the uniform line of cases finding diversity

lacking in consumer protection actions brought by the People, the court relied on this unique

"procedural posture" and the fact that the case was originally brought by Santa Clara County solely *on

its own behalf. Id.* at 729–30. As Judge Chhabria of this District has explained, *In re Avandia* is an

outlier decision that "contains several analytical errors." *In re Facebook*, 354 F. Supp. 3d at 1135.

First, the Eastern District of Pennsylvania applied "the wrong law – Ninth Circuit law rather than the

law of its own circuit" for deciding federal diversity jurisdiction. *In re Facebook*, 354 F. Supp. 3d at

1135. Second, "the court misapplied Ninth Circuit law" because, as *In re Facebook* explained in depth,

the precedent stating that "'the State is such real party when the relief sought is that which enures to it

alone' . . . must be understood as referencing *an example* of a circumstance in which the state is the

real party in interest" and not "the *only* circumstance." *Id.* at 1128–29, 1135. To hold otherwise would

contradict the Ninth Circuit's holding in *Nevada* that the state was the real party in interest *despite*

restitution going to individual consumers. *Nevada*, 672 F.3d at 671-72. Finally, *In re Avandia*'s

reflexive conclusion that civil penalties would not benefit the State was made without any analysis "of

the purpose of California's consumer protection laws and the way they operate." *In re Facebook*, 354

F. Supp. 3d at 1135. As described above, the consistent conclusion in *this* District is that civil penalties

advance the State's interest because they must be spent on consumer protection and are imposed to

punish and deter harm to California consumers. *See id.*; *supra* § I.C.

PLAINTIFF'S REPLY ISO MOTION TO REMAND          18          n:\cxlit\li2024\230428\01738837.docx
CASE NO. 3:23-cv-06456-WHO

1   In short, these distinguishable, idiosyncratic decisions should be ignored in favor of the long

2  line of authority in this District finding that the State is the real party in interest in cases – like the

3  People's here – brought on behalf of the State to vindicate the State's interest in protecting consumers.

4      Because California is the real party in interest and cannot be a citizen of itself, the parties are

5  not completely diverse and federal jurisdiction is lacking. Accordingly, this case, like so many similar

6  actions brought by public prosecutors, should be remanded to State court.

7                                   **CONCLUSION**

8      For the reasons set out above, as well as in the People's Motion to Remand, this Court should

9  grant the People's Motion to Remand and remand this action to California Superior Court.

10 Dated:  February 23, 2024

11                                      DAVID CHIU
                                        City Attorney
12                                      YVONNE R. MERÉ
                                        Chief Deputy City Attorney
13                                      SARA J. EISENBERG
                                        Chief of Complex and Affirmative Litigation
14                                      JOHN H. GEORGE
                                        DAVID S. LOUK
15                                      Deputy City Attorneys

16                              By:  /S/ JOHN H. GEORGE
17                                      JOHN H. GEORGE

18                                      Attorneys for Plaintiff
                                        PEOPLE OF THE STATE OF CALIFORNIA, acting by
19                                      and through San Francisco City Attorney DAVID CHIU