UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SAN FRANCISCO CITY ATTORNEY DAVID CHIU,<br><br>Plaintiff,<br><br>v.<br><br>INCOMM FINANCIAL SERVICES, INC., et al.,<br><br>Defendants. | Case No. 3:23-cv-06456-WHO<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: Dkt. No. 28 |

The People of the State of California, by and through San Francisco City Attorney David Chiu ("the City"), filed this lawsuit against defendants InComm Financial Services, Inc. ("InComm"), TBBK Card Services, Inc. ("TBBK"), Sutton Bank ("Sutton") and Pathward N.A. ("Pathward") in state court. The defendants removed the case to federal court based on diversity jurisdiction, and now the City moves to remand it. Because the State of California is the real party in interest here, and California is not a citizen of any state for the purposes of diversity jurisdiction, there is no federal jurisdiction to hear this suit. For that and the following reasons, the City's motion is granted.

## BACKGROUND

### I.     FACTUAL BACKGROUND

The following facts are alleged in the plaintiff's complaint. ("Compl.") [Dkt. No. 1-1] Ex. B. Defendant InComm is a South Dakota corporation headquartered in Georgia that provides "payment-related services" to consumers and business. *Id.* ¶ 9. One of its products is called a "Vanilla card." *Id.* ¶ 9. These cards function as nonreloadable debit cards and, like debit cards,

can be used as an alternative to cash. *Id.* ¶¶ 1, 21–22. They are sold directly to consumers and are not intended or designed to be used for business purposes. *Id.* ¶ 26. They are sold in-store at retailers throughout California and in San Francisco, and they can also be purchased online. *Id.* ¶ 31. The other defendants--TBBK, a South Dakota corporation headquartered in South Dakota; Sutton, an Ohio corporation headquartered in Ohio; and Pathward, a Delaware corporation headquartered in South Dakota--issue the Vanilla cards sold and serviced by Incomm, including cards sold in San Francisco and throughout California. *Id.* ¶¶ 10–12.

The City alleges that Vanilla card purchasers and consumers have, since at least 2013, been impacted by a practice called "card draining." *Id.* ¶¶ 41, 43. This occurs when the funds on a card are used or drained by a third-party without the cardholder's permission, and often before the cardholder has ever had the chance to use the card. *Id.* ¶¶ 41-43. The City alleges that this "relatively unsophisticated crime" is made possible by InComm's lax and inadequate security measures. *Id.* ¶ 50. It asserts that InComm knows about the card draining, and knows how and why its cards are drained, but has failed to implement reasonable security measures to make its products less susceptible to theft. *Id.* ¶¶ 53–73. The City also alleges that the defendants fail to provide refunds to Vanilla card consumers, in contravention of their legal obligations. *Id.* ¶¶ 74–93.

The complaint asserts that consumers are likely to be misled about the security of the Vanilla cards and about InComm's refund process. *See id.* ¶¶ 94–103. It also alleges that the defendants' conduct harms consumers by forcing them to spend time and money waiting for refunds, by shaming consumers when their cards are declined for lack of funds, and by embarrassing consumers that give the cards as gifts, only to be told by the recipient that there were no funds on the card. *Id.* ¶¶ 104–11.

## II. PROCEDURAL BACKGROUND

This lawsuit was filed in state court, alleging that the defendants violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq; *see* Compl. ¶¶ 118–24. The City seeks an injunction, restitution, and civil penalties. *See* Compl. at pp. 41–42.

InComm removed the case to this court with the consent of the other defendants. [Dkt. No.

1.]. The City has moved to remand the case to state court. ("Mot.") [Dkt. No. 28.]. InComm filed an opposition. ("InComm Oppo.") [Dkt. No. 30.]. Pathward also filed an opposition. ("Pathward Oppo.") [Dkt. No. 31.]. The City replied. ("Repl.") [Dkt. No. 33.]. I vacated the hearing because the motion was adequately presented on the papers.

## LEGAL STANDARD

Generally, a case can only be removed from state to federal court when the federal court would have had original jurisdiction over it. 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332(a)(1), federal diversity jurisdiction exists when each plaintiff is a citizen of a different state from each defendant and the amount in controversy exceeds $75,000. Natural persons are the citizens of the state in which they are domiciled—that is, the state in which they reside with intent to remain permanently. *See Adams v. W. Marine Prod., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020).

But a state is not considered to be a citizen of anywhere, and where a state brings a case under its own state law, federal courts do not have diversity jurisdiction. *See Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014) (citing *Mo., Kan. & Tex. Ry. Co. v. Hickman,* 183 U.S. 53, 57 (1901) ("*Missouri Railway*")). Therefore "neither a state nor a state agency [can] be a party to a diversity action." *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 737 (9th Cir. 2011) ("*Lucent*") (citation omitted). However, the "mere presence" of the state as the party plaintiff does not defeat diversity jurisdiction unless its interests "satisfy the real party to the controversy requirement." *Id.* (citations omitted).

Whether a state is the real party in interest for diversity jurisdiction purposes is a question of federal law, although the inquiry is informed by state law. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 354 F. Supp. 3d 1122, 1124 (N.D. Cal. 2019). This rule is the same when the plaintiff is not the state itself but has brought suit on behalf of the state, so long as the state is the "real party in interest." *Id.* at 1124.

"[R]emoval statutes should be construed narrowly in favor of remand to protect the jurisdiction of state courts." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 764 (9th Cir. 2022) (citation omitted). "The defendant has the burden of proving by a preponderance of the evidence that the requirements for removal jurisdiction have been met." *Id.* at 746 (citation

3

omitted).

## DISCUSSION

The crux of the motion requires me to decide whether the City or the State of California is the real party in interest. The parties agree that a state is not a citizen for diversity jurisdiction purposes and agree that if a state brings a lawsuit under state law, there is no basis for federal jurisdiction. *See Mississippi*, 571 U.S. at 174. The City argues that California is the real party in interest given the nature of the proceedings, the UCL's goal of protecting the public's economic and social well-being, the statutory authorization allowing the City to step into the shoes of the State, and the relief requested. *See generally* Mot. In opposition, the defendants argue that the City is the real party in interest because the lawsuit protects and promotes only San Francisco's interests and seeks relief that will benefit only the City. *See generally* Oppo.

Two cases guide the determination of whether the state is the real party in interest: *Lucent*, 642 F.3d 728, and *Nevada v. Bank of America Corp.*, 672 F.3d 661 (9th Cir. 2012). *See California v. Purdue Pharma L.P.*, No. SACV 14-1080-JLS DFM, 2014 WL 6065907, at *2 (C.D. Cal. Nov. 12, 2014). "[T]he overall test is whether the government official or entity's lawsuit would primarily vindicate state interests and primarily obtain relief for the state, rather than serving primarily parochial interests and obtaining parochial relief." *In re Facebook*, 354 F. Supp. 3d at 1129. This inquiry requires courts to consider the case as a whole and examine "the essential nature and effect of the proceeding as it appears from the entire record." *Nevada*, 672 F.3d at 670 (quoting *Lucent*, 642 F.3d at 740).

## I. THE NATURE OF THE PROCEEDINGS AS A WHOLE

The defendants argue that the City fails to allege any harm to the state as a whole and instead presumes that the State is always a real party in interest whenever a government entity brings suit under the UCL. Pathward Oppo. 5–6, 10; InComm Oppo. 8–11. In turn, the City asserts that this lawsuit protects and promotes California consumers as a whole and so primarily vindicates the State's interest in enforcing its consumer protection laws. Mot. 7–10.

In examining the nature and proceedings as a whole, the guiding inquiry asks "what interest California has in this litigation pursuant to its laws." *Lucent*, 642 F.3d at 738. Though a

4

state's quasi-sovereign interest in enforcing state law does not necessarily make it the real party, *see id.*, it is sufficient when that interest is the primary one in the case, *Nevada*, 672 F.3d at 671.

Additionally, "the California Supreme Court and the Ninth Circuit have confirmed that 'a civil action brought by a governmental entity under [the UCL] is "fundamentally a law enforcement action designed to protect the public and not to benefit private parties."'" *California v. HomeAway.com, Inc.*, No. 2:22-CV-02578-FLA-JPRX, 2023 WL 2497862, at *2 (C.D. Cal. Mar. 14, 2023) (citing *City & Cnty. of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1125–26 (9th Cir. 2006)). "The public has a substantial and specific interest in enforcing consumer protection laws." *Id.* (citing *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 808 (1971) (subsequent history omitted)).

In *Lucent*, 642 F.3d at 735–36, the Ninth Circuit determined that the state agency, rather than the State itself, was the real party in interest, where the discrimination lawsuit alleged that a single individual was subjected to disability discrimination and retaliation at work. The plaintiff-state agency argued that the State was the real party in interest because the statute at issue, the Fair Employment and Housing Act, "state[d] that California has its own interest in such litigation," including "to protect and safeguard the right and opportunity of all persons to seek . . . employment without discrimination," avoid domestic unrest, support full utilization of workers, and protect the interests of employees, employers, and the public in general. *Id.* at 738 (citing Cal. Gov't Code § 12920). But the Ninth Circuit determined that these were "general government interest[s]" insufficient to satisfy the real party in interest requirement. *Id.* at 738–39 (citing *Missouri Railway*, 183 U.S. at 60).

In contrast, in *Nevada*, 672 F.3d at 664, 670–71, the Ninth Circuit determined that the State of Nevada was the real party in interest in a lawsuit brought by the state Attorney General against an out-of-state bank for allegedly fraudulent mortgage and foreclosure practices. The court noted that the Attorney General sued pursuant to a statute that specifically authorized it to bring an action in the name of the state as a whole, and that the suit sought to protect hundreds of thousands of aggrieved homeowners, which affected the state economy as a whole. *See id.* at 665, 670. Looking at the "case as a whole" and the "essential nature and effect of the proceeding," the

5

1  court determined that Nevada was the real party in interest. *Id.* at 670.

2  The Central District reached similar conclusions in two suits brought under the UCL. In
3  *Purdue Pharma*, 2014 WL 6065907, at *1–3, county counsel sued pharmaceutical manufacturers
4  for allegedly deceptive marketing that created an "epidemic" of opioid abuse. The court reasoned
5  that the UCL permits local prosecutors to bring cases in the name of the people of the State and
6  that this lawsuit sought to address harm ""jeopardizing the health and safety of all Californians,"
7  so the State was the real party in interest. *Id.* at *3 (citations omitted). Similarly in *HomeAway*,
8  2023 WL 2497862, at *1, the City Attorney sued an online platform for short-term housing rentals
9  for allegedly violating local law by failing to properly register hosts. The court again noted that a
10 suit brought by the government under the UCL is "fundamentally a law enforcement action
11 designed to protect the public," and that because the lawsuit sought to eliminate unlawful business
12 practices that contributed to the statewide housing crisis, the State had a concrete interest in the
13 lawsuit. *See id.* at *2–3, 10 (citations omitted).

14 Here, the proceedings are akin to *Nevada*, *Purdue Pharma*, and *HomeAway.com*, because
15 they seek to assert statewide protections under the UCL and protect California consumers as a
16 whole. *See id.* at *2. The alleged harms widely affect California consumers and the state
17 economy, including the risk of serious financial harms created by unpaid or late bills, Compl.
18 ¶¶ 109–10, embarrassment to consumers, *id.* ¶¶ 105–08, time wasted with customer service, *id.*
19 ¶¶ 105–06, and the impact of unfair and fraudulent business practices on the state, *id.* ¶¶ 112–24.
20 By seeking to ameliorate these harms to state consumers, this lawsuit emphasizes and promotes
21 California's strong state interest in ensuring a fair marketplace and effectively enforcing its
22 consumer protection laws—much like the state in *Nevada*, *Purdue Pharma*, and *Homeaway*, and
23 unlike the overly "general" interest discussed in *Lucent*, 642 F.3d at 740.

24 Importantly too, the statutory authorization to bring this suit on behalf of California shows
25 that the "essential nature" of the proceeding benefits state interests. *See Nevada*, 672 F.3d at 670.
26 The UCL specifically authorizes the city attorney of any "city and county"—like San Francisco—
27 to bring suits "in the name of the people of the State of California" against entities that engage in
28

1   unfair competition. Cal. Bus. & Prof. Code § 17206(a).[1]  This parallels the statute in *Nevada*,
2   which allowed the attorney general to "bring an action in the name of the State of Nevada" against
3   entities that "engaged or [are] engaging in a deceptive trade practice."  672 F.3d at 671 (quoting
4   Nev. Rev. Stat. § 598.0963(3)); *see also In re Facebook*, 354 F. Supp. 3d at 1125 (similar, under
5   Illinois law).  It is unlike the general-purpose language of the statute in *Lucent*, which did not
6   specifically authorize suits on behalf of the state but rather merely explained the importance of
7   protecting and safeguarding the rights of the public.  642 F.3d at 738 (citing Cal. Gov't Code
8   § 12920).  And it also counters the defendants' arguments that the plaintiffs are improperly
9   assuming that all UCL lawsuits are brought on behalf of the state: instead, the Ninth Circuit and
10  California Supreme Court "have confirmed that a civil action brought by a *governmental entity*
11  under [this statute] is fundamentally a law enforcement action designed to protect the public and
12  not to benefit private parties."  *Homeaway.com, Inc.*, 2023 WL 2497862, at *2 (quoting *PG&E
13  Corp.*, 433 F.3d at 1125–26) (quotation marks omitted)(emphasis supplied); *see also People v.
14  Pac. Land Rsch. Co.*, 20 Cal. 3d 10, 17 (1977).  The State is the real party in interest.

15   The defendants also argue that the complaint fails to allege sufficient harm to California
16  citizens as opposed to residents in other states, but this is unpersuasive.  First, contrary to
17  InComm's assertion, the complaint names specific California residents allegedly harmed by the
18  defendants' practices.  *See, e.g.*, Compl. ¶ 106.  Second, the defendants cite no law to support their
19  argument that the plaintiff must show a certain proportion of harmed consumers reside in
20  California.  *See* Pathward Oppo. 11; *see also Cnty. of San Mateo*, 32 F.4th at 764 (noting the
21  burden is on the defendant to show that the requirements for removal are met).  Indeed, the
22  examples of alleged harm against consumers in other states are included to describe the harm, its
23  widespread nature, and the defendants' knowledge; they do not preclude the State of California
24  from being the real party in interest.  *See* Compl. ¶ 104-11.  These arguments do not show that the

---

[1] The defendants' assertion that San Francisco's population has fallen below the 750,000-person threshold required by another subsection of this statute is unpersuasive, because the statute clearly authorizes the city attorney of any "city and county" to bring such suits.  Cal. Bus. & Prof. Code § 17206(a).  The defendants do not appear to contest authorization under this subsection.

1  State is not the real party in interest.[2]

2  The nature of the proceedings show that California is the real party in interest.

## II. NATURE OF THE RELIEF SOUGHT

The City seeks three types of relief: injunctive relief under California Business and Professions Code section 17200, restitution under section 17203, and civil penalties under sections 17200 and 17206.  The defendants argue that these requests are available to many parties, including private individuals, but that the State can only be the real party in interest where the relief sought is available to the State alone.  Pathward Oppo. 11.

As a preliminary matter, and contrary to the defendants' framing, the nature of the relief requested is neither a standalone element nor dispositive for determining the real party in interest.  All cases discussing this jurisdictional inquiry address the relief requested as one consideration among many, though it is often one of the most important.  *See, e.g.*, *Homeaway.com, Inc.*, 2023 WL 2497862, at *4 (assessing the relief requested as well as other considerations in concluding that the state was the real party in interest); *Purdue Pharma*, 2014 WL 6065907, at *3 (same); *see also Lucent*, 642 F.3d at 738–39 (agreeing with defendants that the relief requested supported the finding that the individual was the real party in interest, but relying on other considerations in final determination).  Recognizing its importance to the inquiry, I discuss it separately here.

The relief requested here favors finding that California is the real party in interest.  First, under the statute at issue, civil penalties are available only to the government, not to private litigants.  *See* Cal. Bus. & Prof. Code § 17206.  Where relief is "available to [the government] alone" rather than "to individual consumers," this favors finding the State is the real party in interest.  *Nevada*, 672 F.3d at 671–72; *see also Homeaway.com, Inc.*, 2023 WL 7497862, at *3 (reaching same conclusion based in part on relief requested); *Purdue Pharma*, 2014 WL 6065907, at *3 (same).  And though the defendants argue that the State cannot be the real party in interest

---

[2] InComm's extended arguments that the City's allegations are merely "conclusory" and lack merit, InComm Oppo. 3-5, are, of course, not arguments that I consider on a motion to remand when determining if I have subject matter jurisdiction to even consider the merits of the case.  *See In re Facebook*, 354 F. Supp. 3d at 1136 ("Of course, we don't yet know if [the plaintiff]'s claims have merit, but that's not the point.  The point is that she has the right, on behalf of the State of Illinois, to assert these claims and attempt to vindicate these interests.").

where penalties flow to the city, I agree with the court in *Homeaway.com, Inc.*, 2023 WL 7497862, at *3, which rejected that argument and determined that where the money flows is less important than what it is used for. Here, as there, the money is statutorily required to be used "to advance a State interest—the enforcement of consumer protection laws." *Id.* (citing Cal. Bus. & Prof. Code § 17206(c)(4)). This supports the finding that the State is the real party in interest.

Second, while injunctive relief is available to individuals and the government, the State is subject to a lower evidentiary standard, which other courts have found sufficient for serving state interests. *See Purdue Pharma*, 2014 WL 6065907, at *3 (finding the relief sought showed that California was the real party in interests because "as in *Nevada,* Plaintiff seeks injunctive relief that is subject to a lesser evidentiary standard than for private individuals" (first citing Cal. Bus. & Prof. Code §§ 17204, 17535; and then citing *Nevada,* 672 F.3d at 671)). Here, too, the relief benefits state interests, which shows that the State is the real party in interest.

Third, the fact that the lawsuit seeks restitution for individual consumers does not negate the state interest in this case. Indeed, the Ninth Circuit in *Nevada* rejected this very argument and held that the state's "sovereign interest in protecting its citizens and economy … is not diminished *merely because* it has tacked on a claim for restitution." *Nevada*, 672 F.3d 671 (9th Cir. 2012); *see also In re Facebook*, 354 F. Supp. 3d at 1127 (same).

Finally, the defendants cite a case from the Eastern District of Pennsylvania that applied California law and reached a contrary conclusion with respect to the real party in interest. *See In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 238 F. Supp. 3d 723, 729 (E.D. Pa. 2017). But in a well-reasoned opinion, the Hon. Vince Chhabria determined that it likely misapplied the law. *See In re Facebook*, 354 F. Supp. 3d at 1135. It is apparently the only case to find diversity jurisdiction on parallel facts under California law. Judge Chhabria's analysis is persuasive and defendants' reliance on that case is misplaced.

Accordingly, the requested relief supports my conclusion that the State is the real party in interest.

\*   \*   \*

The State of California, therefore, is the real party in interest in this lawsuit. Because

California is not a citizen, and this case was brought under California law, I do not have jurisdiction. *See Mississippi*, 571 U.S. at 174.

## CONCLUSION

For those reasons, the motion to remand is GRANTED. I ORDER that this case be REMANDED to the California Superior Court for the County of San Francisco.

**IT IS SO ORDERED.**

Dated: March 26, 2024



William H. Orrick
United States District Judge